JOURNAL ENTRY AND OPINION
This is an accelerated appeal from an order of Judge Christine T. McMonagle granting summary judgment in favor of appellee Continental Casualty Company ("Continental") on appellants David and DiAnna Lamphear's claim for un/underinsured motorist ("UMI") benefits. The Lamphears contend that Continental failed to offer his employer, the named insured, UMI coverage when it issued its commercial automobile liability and umbrella insurance polices. Based upon Linko v. IndemnityIns. Co. (2000), 90 Ohio St.3d 445, 739 N.E.2d 38, announced one month before oral argument in the present matter, we reverse and remand.
The record discloses the following. At about 1:00 p.m. on November 7, 1997, David Lamphear, while on the job and operating a vehicle owned by his employer, Sprint, sustained serious injuries as a result of a collision caused by an underinsured motorist. The Sprint vehicle was insured under two policies issued by Continental and in effect on that date: (1) a primary policy with liability limits of 2,000,000 (1-57347434); and (2) an umbrella/excess policy with $9,000,000 in liability coverage (UMB 157350592). He sought underinsured motorist benefits through both of the Continental policies, but the carrier claimed that Sprint had unequivocally rejected UM/UIM insurance coverages in each of those policies as far back as 1992.
On May 1, 1999, the Lamphears filed a complaint for declaratory judgment on UIM coverage and for trial on damages against Continental, to which the carrier answered that no UIM coverage was available under its Sprint policies. The parties thereafter each filed a motion for summary judgment and a brief in opposition.
Continental claimed that James O'Neal, Sprint's Director of Risk Management Services, consistently rejected all offers of UM/UIM coverage in the various liability policies issued to Sprint between 1990 and 1996 because Sprint intended to treat all its employees injured, while in the scope of their employment, equally. O'Neal, therefore, was offered and rejected UM/UIM coverage in order that employees injured while operating Sprint vehicles would be limited to the same worker's compensation benefits received by co-employees injured in non-motor vehicle incidents. Continental also claimed that, while O'Neal had expressly rejected UM/UIM coverage in the 1996 primary and umbrella policies, provisions within the umbrella policy specifically excluded payment for damages arising under UM/UIM laws.[1]
In its cross-motion for summary judgment, the Lamphears argued that the purported oral and written "rejections" of UM/UIM coverage in the policies were not effective because Continental had never made a valid, written offer of such coverages to Sprint. They contended that, given the parties' December 23, 1999 Agreed Joint Stipulations, Continental failed to sustain its burden to show valid rejections. The stipulations provided:
 1. * * * [R]egarding all of the policies, there was never a quotation provided by the insurer or its agent for uninsured/underinsured coverage.
 2. * * * [T]he forms which have been identified as those which purport to reject uninsured/underinsured coverages were completed by the insurer or its agents and simply signed by the insured.
 3. The various forms and documents which are attached to the Defendant's Motion for Summary Judgment, and Defendant's Supplemental Motion for Summary Judgment, are all that have been able to be located by the Defendant as they relate to the acceptance and/or rejection of uninsured/underinsured coverages.
They also argued that, under the holdings by the Court in Gyori v.Johnston Coca-Cola Bottling Group, Inc. (1996), 76 Ohio St.3d 565,669 N.E.2d 824, the preprinted and prefilled-out forms signed by O'Neal attendant to the policies in effect on November 7, 1997, did not expressly or knowingly reject UM/UIM coverage because they were received after May 2, 1996 and October 17, 1996, not before the commencement of April 1, 1996 policy period. In response to Continental's claim under R.C. 3937.18(C), that once Sprint rejected UM/UIM coverage in 1991 and 1992 it was not required to offer that coverage to it in renewal policies, the Lamphears argued that the 1996 primary policy is not a renewal and that the various "rejections" signed in 1991, 1992, and 1993 cannot be considered valid under R.C. 3937.18.
In a written opinion and order journalized on June 27, 2000, the judge granted Continental's motion for summary judgment and denied the Lamphears' motion for summary judgment. The judge concluded that UM/UIM insurance was unavailable because O'Neal had specified he did not want UM/UIM coverage, Continental had provided acceptance or rejection forms with its 1993 policy proposals and O'Neal had expressly rejected the offers. Therefore, the rejections of UM/UIM coverages in 1993 were considered valid rejections prior to the 1996 policy renewals. Continental was, she concluded, not required to offer those coverages in the 1996 renewal proposals.
The Lamphears' two assignments of error will be addressed together:
 I. THE TRIAL COURT ERRED IN GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT WHEN THERE WAS NEVER A VALID OFFER OF UM/UIM COVERAGE NOR REJECTION OF SAME APPLICABLE TO THE POLICIES IN QUESTION.
 II THE TRIAL COURT ERRED IN DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT WHEN THERE WAS NEVER A VALID OFFER OF UM/UIM COVERAGE NOR REJECTION OF SAME APPLICABLE TO THE POLICIES IN QUESTION.
Because of the holdings by the Ohio Supreme Court in Linko v. Indemn,Ins. Co. of N. Am. (2000), 90 Ohio St.3d 445, 739 N.E.2d 338, this court enjoyed an advantage not available to the judge and the parties. It held, in pertinent part, that "[t]he four corners of the insurance agreement control in determining whether (a UM/UIM) waiver was knowingly and expressly made by each of the named insureds." Id. at 448, 450,739 N.E.2d at 341, 343.
 Indemnity's alleged offer is complete only in its incompleteness. It does not describe the coverage, does not list the premium costs of UM/UIM coverage, and does not expressly state the coverage limits. We find that an offer must include those three elements. The Indemnity rejection form, lacking in that required information, thus could not be termed a written offer that would allow an insured to make an express, knowing rejection of the coverage.
* * *
 By requiring an offer and rejection to be in writing, this court impliedly held in Gyori that if the rejection is not within the contract, it is not valid. In doing so, this court greatly simplified the issue of proof in these types of cases — the offer and rejection are either there or they are not. Extrinsic evidence is not admissible to prove that a waiver was knowingly and expressly made by each of the named insureds. Id. at 449-450, 739 N.E.2d at 342-43
Justice Pfeifer's decision in Gyori, supra, stated that the insurer offered UM coverage because it discussed the coverage with the insured's agent and attached to its proposal a form that allowed the insured to accept or reject UN coverage; however, when the written rejection form was not timely given to the carrier, UM coverage was imposed by operation of law. Earlier in the decision, however, it stated:
 Accordingly, we hold that there can be no rejection pursuant to R.C. 3937.18(C) absent a written offer of UM coverage from the insurance provider. Gyori, 76 Ohio St.3d at 568, 669 N.E.2d at 827; accord Id. paragraph 1 of the syllabus.
Continental cites Hansberry v. Westfield Ins. Co. (June 27, 2000), Ross App. Nos. 99CA2504-05, unreported, and Remington v. Triplett (June 30, 1999), Fairfield App. No. 98-CA 00070, unreported, for the proposition that evidence of oral discussions resulting in the insured's understanding of the nature and purposes of UM/UIM coverages, when combined with a signed rejection form, constitute a sufficient offer and rejection under R.C. 3937.18(C). Continental also asserts that the May 1, 1996 rejection was not "ineffective" because the undisputed evidence established that the primary and umbrella policies issued between 1990 and 1996 were "renewal" policies and the earlier rejections were effective for purposes of the 1996-1999 policies.
Whether the purported rejections of UM/UIM coverages on the two policies between 1991 and 1996, all received by the carrier after the commencement of each policy period, would constitute a rejection of such coverages in subsequent renewals, or satisfy the requirements of R.C.3937.18, is not dispositive of the issue before us. The insurer bears "the burden of showing that any rejection was knowingly made by the customer." Ady V. W. Am. Ins. Co. (1982), 69 Ohio St.2d 593, 597,433 N.E.2d 547, 549; accord Gyori, 76 Ohio St.3d at 567-568,669 N.E.2d at 826. "[A] valid rejection requires a meaningful offer, i.e., an offer that is an offer in substance and not just in name." Linko,90 Ohio St.3d at 449, 739 N.E.2d at 342.
The parties stipulated that Continental did not provide Sprint, at any time, with a quotation for the premium associated with UM/UIM coverage. The Continental documents and rejection forms, lacking this essential element of a valid offer of UM/UIM coverage, cannot be termed a "written offer" that would allow Sprint "to make an express, knowing rejection of the coverage" at any time during the policy periods at issue. Linko,90 Ohio St.3d at 449, 739 N.E.2d at 342. Continental failed, therefore, to sustain its burden to show that it provided to Sprint a valid, written offer of UM/UIM coverage without which there can be no valid rejection and, therefore, UM/UIM coverage arises by operation of law equal to the liability limits of both policies. Scott-Pontzer v. Liberty Mut. FireIns. Co. (1999), 85 Ohio St.3d 660, 710 N.E.2d 1116; Muerchke v. Storey
(Oct. 28, 1999), Cuyahoga App. No. 74365, unreported. We reject the rules announced in Hansberry and Remington because they are inconsistent with the rule announced in Linko.[2]
We reverse the order granting Continental's motion for summary judgment and denying the Lamphears' motion for summary judgment. We grant partial summary judgment in favor of the Lamphears on their claim that UM/UIM coverage arises by operation of law equal to the liability limits of both policies issued by Continental to Sprint.
It is ordered that the appellants recover from the appellee their costs herein taxed.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
DIANE KARPINSKI. ADM. J. and PATRICIA ANN BLACKMON.J., CONCUR.
[1] Continental admited that such policy provisions did not perse exclude UM/UIM coverage.
[2] Linko prohibits extrinsic evidence. The Certified Question, 3(c), asking whether extrinsic evidence of intent is to be considered in assessing the scope and validity of a rejection form, was found to be moot in light of the Court's response in 3 (b) requiring a written offer. Linko, 90 Ohio St.3d at 448, 739 N.E.2d at 341.