OPINION
{¶ 1} Defendant-appellant, Pacific Employers Insurance Company ("Pacific"), appeals from the Franklin County Court of Common Pleas' grant of summary judgment to the extent that the trial court held that plaintiff-appellee, George McNeeley, could recover underinsured motorist coverage under the excess general liability policy Pacific issued to McNeeley's employer. As cross-appellant, McNeeley appeals from the trial court's grant of summary judgment to the extent that the trial court held that McNeeley could not recover underinsured motorist coverage under the business auto liability policy Pacific issued to McNeeley's employer. For the following reasons, we reverse and remand.
 {¶ 2} On July 21, 2001, McNeeley brought suit against Pacific seeking underinsured motorist benefits under a business auto liability policy and an excess general liability policy, both of which Pacific issued to McNeeley's employer, Wendy's International, Inc. ("Wendy's"). In the complaint, McNeeley alleged that he sought underinsured motorist benefits for injuries he suffered on October 8, 1999, when a vehicle driven by an underinsured motorist negligently struck his vehicle.
 {¶ 3} McNeeley filed a motion for summary judgment arguing that, pursuant to Scott-Pontzer v. Liberty Mut. Fire Ins. Co. (1999),85 Ohio St.3d 660, he was entitled to underinsured motorist coverage under both the business auto liability policy and the excess general liability policy. Pacific also filed a motion for summary judgment, arguing that neither policy included underinsured motorist coverage because: (1) that coverage was properly offered and rejected as part of the business auto liability policy; and (2) the excess general liability policy was not a motor vehicle liability policy.
 {¶ 4} The trial court issued a decision granting both summary judgment motions in part, and denying both summary judgment motions in part. With regard to the business auto liability policy, the trial court concluded that Pacific validly offered and Wendy's validly rejected underinsured motorist coverage, thus precluding McNeeley from recovering underinsured motorist benefits. With regard to the excess general liability policy, the trial court concluded that underinsured motorist coverage arose by operation of law because the policy was a motor vehicle policy under Ohio law. Thus, in sum, the trial court held that, while underinsured motorist coverage was available to McNeeley under the excess general liability policy, it was not available under the business auto liability policy. Both parties then appealed from this judgment.
 {¶ 5} On appeal, Pacific assigns the following errors:
 {¶ 6} "1. The trial court erred in granting summary judgment declaring that plaintiff, George McNeeley, was entitled to underinsured motorist coverage from defendant, Pacific Employers Insurance Company.
 {¶ 7} "2. The trial court erred in denying the motion for summary judgment of Pacific Employers insurance company on the issue of the availability of underinsurance motorist coverage to plaintiff, George McNeeley."
 {¶ 8} By his cross-appeal, McNeeley assigns the following error:
 {¶ 9} "1. The trial court erred in concluding that Defendant-Appellant Pacific Employers Insurance Company executed a valid rejection of UM coverage."
 {¶ 10} Appellate review of summary judgment motions is de novo. Helton v. Scioto Cty. Bd. Of Commrs. (1997), 123 Ohio App.3d 158, 162. "When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court." Mergenthal v. Star Banc Corp. (1997),122 Ohio App.3d 100, 103. Civ.R. 56(C) provides that summary judgment may be granted when the moving party demonstrates that: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. State ex rel. Grady v. State Emp. Relations Bd. (1997), 78 Ohio St.3d 181, 183.
 {¶ 11} We will first address the assignment of error asserted in McNeeley's cross-appeal. By this assignment of error, McNeeley argues that underinsured motorist coverage must be imposed upon the business auto liability policy by operation of law because Pacific failed to make a proper offer and to secure a proper rejection of that coverage.
 {¶ 12} Pursuant to Linko v. Indemn. Ins. Co. of N. Am. (2000),90 Ohio St.3d 445, in order for a rejection of uninsured/underinsured motorist coverage to be valid, there must be a meaningful offer, one that contains a brief description of the coverage, the premium for that coverage, and an express statement of the coverage limits. In the absence of an offer that comports with the Linko requirements, any rejection of uninsured/underinsured motorist coverage is meaningless, and that coverage arises by operation of law. Abate v. Pioneer Mutual Cas. Co. (1970), 22 Ohio St.2d 161, paragraph two of the syllabus.
 {¶ 13} In the case at bar, the uninsured/underinsured motorist coverage offer form completed by Wendy's contained neither a description of uninsured/underinsured motorist coverage, a statement of the premium for uninsured/underinsured motorist coverage, nor an express statement of the uninsured/underinsured motorist coverage limits. Therefore, we conclude that the offer and rejection were invalid and, thus, underinsured motorist coverage arises by operation of law.
 {¶ 14} Pacific, however, argues that the Linko requirements are inapplicable to the case at bar because they were superceded by the amendments to R.C. 3937.18(C), enacted by H.B. No. 261. In making this argument, Pacific properly asserts that R.C. 3937.18, as amended by H.B. No. 261, controls the business auto liability policy because it was the statutory law in effect at the time the parties entered into the policy on January 1, 1999. Ross v. Farmers Ins. Group of Cos. (1998),82 Ohio St.3d 281, syllabus. However, Pacific's argument is unavailing. Although Linko interpreted a pre-H.B. No. 261 version of R.C. 3937.18, the Linko requirements did not change with the enactment of the H.B. No. 261 amendments to R.C. 3937.18. Kemper v. Michigan Millers Mut. Ins. Co., 98 Ohio St.3d 162, 2002-Ohio-7101, at ¶ 4.
 {¶ 15} Pacific also argues that extrinsic evidence, namely, the affidavit of Wendy's claim manager, establishes that Wendy's knowingly and expressly waived underinsured motorist coverage as part of the business auto liability policy. Again, we find Pacific's argument unavailing. Pursuant to Linko, supra, at 450, "[e]xtrinsic evidence is not admissible to prove that a waiver was knowingly and expressly made by each of the named insureds." Contrary to Pacific's assertion, nothing in the Ohio Supreme Court's recent decision of Kemper, supra, alters this holding. Consequently, Wendy's claim manager's affidavit is irrelevant to our determination that Pacific's offer of underinsured motorist coverage did not comport with the Linko requirements.
 {¶ 16} Next, Pacific contends that, even if underinsured motorist coverage arises by operation of law, McNeeley is precluded from recovering pursuant to three different policy provisions. First, Pacific argues that the "Employees as Insureds" endorsement specifies that employees are only insureds if they are using autos in the course of their employment. Second, Pacific argues that inclusion of individuals as insureds in the "Drive Other Car" endorsement removes the ambiguity from the word "you" that was present in Scott-Pontzer. Third, Pacific argues that, pursuant to the "Symbol 6" designation, underinsured motorist coverage is limited to autos licensed or principally garaged in states where underinsured motorist coverage is mandatory and cannot be rejected. Because Ohio statute allows an insured to reject underinsured motorist coverage, Pacific asserts that underinsured motorist coverage does not extend to McNeeley.
 {¶ 17} None of these arguments is persuasive because each relies upon policy language that does not apply to underinsured motorist coverage that arises by operation of law. First, by its terms, the "Employees as Insured" endorsement adds language to the liability coverage "Who is an Insured" provision. Therefore, the "Employees as Insured" endorsement has no bearing upon underinsured motorist coverage.
 {¶ 18} Second, although the "Drive Other Car" endorsement and the "Symbol 6" designation apply to underinsured motorist coverage, both address underinsured motorist coverage arising under the policy, not underinsured motorist coverage arising by operation of law. As reflected in the "Limit of Liability — Uninsured/Underinsured Motorists" endorsement, the underinsured motorist coverage provided in the policy was "rejected" for Ohio insureds and, thus, it never existed for Ohio insureds. We are led to this conclusion even though the rejection was defective under Linko. Consequently, the terms of the underinsured motorist coverage provided in the policy, and the policy provisions interpreting or modifying that coverage, are a nullity as to Ohio insureds and cannot preclude the underinsured motorist coverage that arises by operation of Ohio law. Rather, the extent and nature of the underinsured motorist benefits available to McNeeley, as an Ohio insured, is determined by operation of Ohio law. Riggs v. Motorists Mut. Ins. Co., Franklin App. No. 02AP-876, 2003-Ohio-1657, at ¶ 50 ("[a]n `other-owned auto' exclusion cannot be applied to preclude the general UM/UIM coverage which arises by operation of law"); Carmona v. Blankenship, Franklin App. No. 02AP-14, 2002-Ohio-5003, at ¶ 23 (same).
 {¶ 19} Accordingly, we sustain McNeeley's assignment of error.
 {¶ 20} By Pacific's assignments of error, it argues that the trial court erred in concluding that McNeeley was entitled to underinsured motorist coverage under the excess general liability policy. We agree.
 {¶ 21} Preliminarily, we note that Pacific issued the excess general liability policy to Wendy's on January 1, 1999. Because the statutory law in effect at the time the parties entered into an insurance policy determines the parties' rights and duties under the policy, we conclude that R.C. 3739.18, as amended effective September 3, 1997, by H.B. No. 261, is controlling. Ross, supra, at syllabus.
 {¶ 22} To determine whether underinsured motorist coverage is available to McNeeley under the excess general liability policy, we must first address whether the excess general liability policy is an "automobile liability or motor vehicle liability policy of insurance." If it is not, then Pacific was not required to offer underinsured motorist coverage, and it cannot arise by operation of law.
 {¶ 23} Pursuant to R.C. 3739.18(L), as enacted by H.B. No. 261, "automobile liability or motor vehicle liability policy of insurance" means either:
 {¶ 24} "(1) Any policy of insurance that serves as proof of financial responsibility, as proof of financial responsibility is defined by division (K) of section 4509.01 of the Revised Code, for owners or operators of the motor vehicles specifically identified in the policy of insurance; [or]
 {¶ 25} "(2) Any umbrella liability policy of insurance."
 {¶ 26} In order to qualify as an "automobile liability or motor vehicle liability policy of insurance" under R.C. 3937.18(L)(1), a policy must "precisely, particularly and individually identif[y]" the motor vehicles covered. Gibbons-Barry v. Cincinnati Ins. Cos., Franklin App. No. 01AP-1437, 2002-Ohio-4898, at ¶ 44. In the case at bar, nowhere in the declarations page or in the excess general liability policy itself are any vehicles "specifically identified." Therefore, the excess general liability policy is not a "automobile liability or motor vehicle liability policy" under R.C. 3937.18(L)(1).
 {¶ 27} In order to qualify as an "automobile liability or motor vehicle liability policy of insurance" under R.C. 3937.18(L)(2), a policy must be an "umbrella liability policy of insurance." Generally, an umbrella liability policy is defined as an insurance policy that provides excess coverage beyond an insured's primary liability policy. Dixon v. Professional Staff Management, Franklin App. No. 01AP-1332, 2002-Ohio-4493, at ¶ 36. More specifically, an umbrella liability policy performs dual functions: (1) to provide additional coverage in situations where primary liability coverage limits are exhausted (i.e., vertical coverage); and (2) to "drop down" and pay claims that are beyond the coverage provided by the insured's primary liability coverage (i.e., horizontal coverage). Pillo v. Stricklin (Feb. 5, 2001), Stark App. No. 2000-CA-00201, citing American Special Risk Ins. Co. v. A-Best Products, Inc. (N.D.Ohio. 1997), 975 F. Supp. 1019, 1022, affirmed (C.A.6, 1998),166 F.3d 1213. See, also, Gencorp, Inc. v. American International Underwriters (C.A.6, 1999), 178 F.3d 804, 809 f.3; Commercial Union Ins. Co. v. Walbrook Ins. Co. (C.A.1, 1993), 7 F.3d 1047, 1053; 1 Holmes' Appleman on Insurance (1996) 323, Section 2.16 ("[w]henever there are gaps in the underlying coverage * * * the umbrella insurer is a primary insurer and is treated as such").
 {¶ 28} Like umbrella liability policies, excess liability insurance policies serve to augment primary liability coverage by providing excess coverage when primary coverage limits are exhausted. Mazza v. American Continental Ins. Co., Summit App. No. 21192, 2002-Ohio-360, at ¶ 65. However, unlike umbrella policies, excess insurance liability policies do not "drop down" to provide coverage for occurrences not covered by the underlying primary liability policy. Scottsdale Ins. Co. v. Safeco Ins. Co. of Am. (M.D.Ala. 2000),111 F. Supp.2d 1273, 1278, affirmed (C.A.11, 2001), 254 F.3d 1084, citing Ende, Anderson and Crego, Liability Insurance: A Primer for College and University Counsel (1997), 23 J.C. U.L. 609, at 676.
 {¶ 29} Although the policy at issue here is entitled "excess general liability policy," the label the insurer affixes to an insurance policy does not determine the type of coverage offered under the policy. Dixon, supra, at ¶ 23. Consequently, we must examine the scope of coverage under the excess general liability policy to determine whether it is an excess liability policy or an umbrella liability policy. The policy provides the following coverages:
 {¶ 30} "SECTION I — COVERAGES
 {¶ 31} "COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY
 {¶ 32} "1. Insuring Agreement
 {¶ 33} "a. We will pay the insured for the `ultimate net loss' in excess of the `retained limit' shown in the declarations that the insured becomes legally obligated to pay as damages because of `bodily injury' or `property damage' to which this insurance applies. No other obligation or liability to pay sums or perform acts or services is covered * * *.
 {¶ 34} "* * *
 {¶ 35} "COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY
 {¶ 36} "1. Insuring Agreement
 {¶ 37} "a. We will pay the insured for the `ultimate net loss' in excess of the `retained limit' shown in the declarations that the insured becomes legally obligated to pay as damages because of `personal injury' or `advertising injury' to which this insurance applies. No other obligation or liability to pay sums or perform acts or services is covered * * *."
 {¶ 38} The "retained limit" shown in the declarations is $500,000 for each occurrence. Thus, an insured can only recover under the excess general liability policy if the insured sustains $500,000 in damages because of a covered injury.
 {¶ 39} Because the excess general liability policy provides additional, not broader, liability coverage, it is an excess liability policy, not an umbrella liability policy. In other words, the excess general liability policy does not constitute an umbrella liability policy because it does not provide horizontal coverage, or coverage that "drops down" when a primary liability policy does not cover the insured's injury.
 {¶ 40} As the excess general liability policy is not an umbrella policy, it is not an "automobile liability or motor vehicle liability policy" under R.C. 3937.18(L)(2). Given that the excess general liability policy does not satisfy either R.C. 3937.18(L)(1) or (2), Pacific was not required to offer underinsured motorist coverage as part of the policy. Thus, we conclude that McNeeley is not entitled to recover underinsured motorist coverage under the excess general liability policy. Accordingly, we sustain both of Pacific's assignments of error.
 {¶ 41} For the foregoing reasons, Pacific's first and second assignments of error are sustained. Additionally, McNeeley's assignment of error is sustained. The judgment of the Franklin County Court of Common Pleas is reversed, and this matter is remanded to the trial court for further proceedings in accordance with law and consistent with this opinion.
Judgment reversed and cause remanded.
BRYANT and TYACK, JJ., concur.