JOURNAL ENTRY AND OPINION
{¶ 1} The appellant, John Kalista, appeals the decision of the Cuyahoga County Court of Common Pleas, Civil Division, which denied his motion for summary judgment and granted Pacific Employers Insurance Company's ("Pacific") motion for summary judgment. For the following reasons, we find the appellant's appeal to have merit.
 {¶ 2} On July 24, 2000, Kalista filed suit against David Baron and CIGNA Property and Casualty ("CIGNA"). On November 9, 2000, CIGNA failed to answer the plaintiff's complaint, and default judgment was entered against them. The trial court granted judgment for Kalista in the amount of $239,500, less $100,000 settlement collected from Allstate Insurance.
 {¶ 3} On February 21, 2001, the trial court granted a motion by CIGNA to vacate the default judgment. CIGNA claimed that Pacific, one of its subsidiaries, was the proper defendant since it issued the insurance policy to Mr. Kalista's employer, Praxair, Inc. On October 12, 2001, Kalista was granted leave to file an amended complaint and substituted Pacific for CIGNA.
 {¶ 4} The instant matter stems from a motor vehicle accident that occurred on July 26, 1998. John Kalista was seated on his motorcycle and parked in the westbound berm of State Route 2 in Erie County, Ohio. The tortfeasor, David Baron, lost control of his vehicle and struck Kalista. The impact catapulted Kalista into the air and over the guardrail causing serious injuries.
 {¶ 5} Baron was insured under a policy issued by Allstate Insurance Company, which had a liability limit of $100,000. Kalista accepted the Allstate policy limit in exchange for a liability release against Baron, who was dismissed from this suit.
 {¶ 6} On June 30, 1998, Pacific issued a Business Automobile Policy ("Policy"), No. ISA H07402776, to Praxair, Inc. The Policy had a liability limit of $2,000,000 per accident. Kalista claims he is entitled to uninsured/underinsured ("UM/UIM") motorists benefits under this Policy pursuant to Scott-Pontzer v. Liberty Mutual Fire Insurance Company
(1999), 85 Ohio St.3d 660. The Policy issued by Pacific contains a "selection form," which the appellee claims served as a valid offer and rejection of UM/UIM coverage.
 {¶ 7} On December 10, 2002, the trial court granted Pacific's motion for summary judgment as a matter of law based on the court's holding that UIM coverage had been offered and properly rejected by Pacific's insured. For the reasons set forth below, we reverse and remand this cause to the trial court.
 {¶ 8} The appellant presents five assignments of error, which we address together since they all challenge the trial court's decision concerning cross motions for summary judgment and share a common basis in law and fact.[1]
 {¶ 9} Civ.R. 56 provides that summary judgment may be granted only after the trial court determines: 1) no genuine issues as to any material fact remain to be litigated; 2) the moving party is entitled to judgment as a matter of law; and 3) it appears from the evidence that reasonable minds can come to but one conclusion and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. Norris v.Ohio Std. Oil Co. (1982), 70 Ohio App.2d 1; Temple v. Wean United, Inc.
(1977), 50 Ohio St.2d 317.
 {¶ 10} It is well established that the party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial. Celotex Corp. v. Catrett (1987), 477 U.S. 317,330; Mitseff v. Wheeler (1988), 38 Ohio St.3d 112, 115. Doubts must be resolved in favor of the nonmoving party. Murphy v. Reynoldsburg (1992),65 Ohio St.3d 356.
 {¶ 11} In Dresher v. Burt (1996), 75 Ohio St.3d 280, the Ohio Supreme Court modified and/or clarified the summary judgment standard as applied in Wing v. Anchor Medina, Ltd. of Texas (1991), 59 Ohio St.3d 108. Under Dresher, "* * * the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact or material element of the nonmoving party's claim." Id. at 296. The nonmoving party has a reciprocal burden of specificity and cannot rest on mere allegations or denials in the pleadings. Id. at 293. The nonmoving party must set forth "specific facts" by the means listed in Civ.R. 56(C) showing a genuine issue for trial exists. Id.
 {¶ 12} This court reviews the lower court's granting of summary judgment de novo. Brown v. Scioto Bd. of Commrs. (1993),87 Ohio App.3d 704. An appellate court reviewing the grant of summary judgment must follow the standards set forth in Civ.R. 56(C). "The reviewing court evaluates the record * * * in a light most favorable to the nonmoving party * * *. [T]he motion must be overruled if reasonable minds could find for the party opposing the motion." Saunders v. McFaul
(1990), 71 Ohio App.3d 46, 50; Link v. Leadworks Corp. (1992),79 Ohio App.3d 735, 741.
 {¶ 13} The appellant asserts that he is afforded uninsured/ underinsured motorist ("UM/UIM") coverage pursuant to the Ohio Supreme Court's ruling in Scott-Pontzer v. Liberty Mut. Fire Ins. Co. (1999),85 Ohio St.3d 660. In Scott-Pontzer, the Supreme Court of Ohio determined that a commercial automobile policy issued to Superior Dairy provided benefits to Kathryn, the surviving spouse of Christopher Pontzer. Pontzer was an employee of Superior Dairy, not in the scope of his employment, when killed in an automobile accident caused by the negligence of another motorist. The commercial automobile policy issued to the corporation designated Superior Dairy as the named insured, and the underinsured motorists section included the following definition of insured:
 {¶ 14} "B. Who Is An Insured
 {¶ 15} "1. You
 {¶ 16} "2. If you are an individual, any family member.
 {¶ 17} "3. Anyone else occupying a covered auto or a temporary substitute for a covered auto. `The covered auto must be out of service because of its breakdown, repair, servicing, loss or destruction.
 {¶ 18} "4. Anyone for damages he or she is entitled to recover because of bodily injury sustained by another insured."
 {¶ 19} The Supreme Court of Ohio concluded that the above definition of "insured" was ambiguous in that the term "you" could be construed to include the corporation's employees because a corporation can act only by and through real live persons. Employing the legal principle that ambiguous provisions in an insurance contract will be construed against the insurer, the court concluded that Pontzer was an insured at the time of his death under the underinsured motorist provision of the commercial automobile policy issued to Superior Dairy.
 {¶ 20} The Policy presented by the appellees contains the following relevant provisions:
 {¶ 21} "1. Who Is An Insured
 {¶ 22} "The following are `insureds.'
 {¶ 23} "a. You for any covered `auto.'
 {¶ 24} "b. Anyone else while using with your permission a covered `auto' you own, hire, or borrow except:
 {¶ 25} "* * *"
 {¶ 26} The named insured of the Policy is Praxair, Inc. Use of the term "you" constitutes the same ambiguity found by the Supreme Court inScott-Pontzer. Thus, the ambiguous term "you" is deemed to include employees of the corporate entity.
 {¶ 27} Next, we focus on the definition section. The term "auto" is defined as "a land motor vehicle," which this court interprets to include motorcycles absent a policy provision excluding them. Last, the coverage applies to any "Owned Autos," qualifying the appellant as an insured under this policy.
 {¶ 28} The Ohio Supreme Court addressed the issue of what constitutes a "valid offering" of UM/UIM coverage under R.C. 3937.18, prior to the H.B. 261 amendment in Linko v. Indemnity Insurance Company ofNorth America (2000), 90 Ohio St.3d 445. The court held that the following elements are required for a valid written offering of UM/UIM coverage: 1) include a description of the coverage), 2) expressly set forth a premium for UM/UIM coverage, and 3) expressly state the coverage limits in the offer. Furthermore, the court held the four corners of the insurance policy controlled in determining whether a waiver of UM/UIM coverage had been made knowingly and expressly by the insured; extrinsic evidence is not permitted to show whether the waiver was knowing or express. Id.
 {¶ 29} It is undisputed that the present insurance policy was issued after the enactment of H.B. 261. According to R.C. 3937.18, as amended by H.B. 261, effective September 3, 1997, every automobile policy must be accompanied by an offer of UM/UIM or this coverage arises by operation of law. R.C. 3937.18(C) states:
 {¶ 30} "A named insured's or applicant's rejection of both coverages as offered under division (A) of this section, or named insured's or applicant's selection of such coverages in accordance with the schedule of limits approved by the superintendent, shall be in writing and shall be signed by the named insured or applicant. A named insured's or applicant's written, signed rejection of both coverages as offered under division (A) of this section, or a named insured's or applicant's written, signed selection of such coverages in accordance with the schedule of limits approved by the superintendent, shall be effective on the day signed, shall create a presumption of an offer of coverages consistent with division (A) of this section, and shall be binding on all other named insureds, insureds, or applicants."
 {¶ 31} Appellee claims this section of R.C. 3937.18 entitles the insured to a presumption of a valid offer of UM/UIM coverage from a written rejection, but the statute does not define what qualifies as a valid rejection.
 {¶ 32} After the enactment of H.B. 261, the Ohio Supreme Court certified two questions concerning the future applicability of Linko. The court was asked in Kemper v. Michigan Millers Mutual Insurance Co.
(2002), 98 Ohio St.3d 162, "Are the requirements of Linko * * * relative to an offer of UM/UIM coverage, applicable to a policy of insurance written after the enactment of [1997] H.B. 261 and before [2001] S.B. 97?" Id. at ¶ 2. The Supreme Court answered this question in the affirmative. The second question certified asked, "If the Linko
requirements are applicable, does, under [1997] H.B. 261, a signed rejection act as an effective declination of UM/UIM coverage, where there is no other evidence, oral or documentary, of an offer of coverage?" Id. at ¶ 3. The court answered this question in the negative. Therefore, according to the Supreme Court, in order for a rejection of UM/UIM coverage to be effective, it must still comply with the offering elements set forth in Linko.
 {¶ 33} Appellees contend that Kemper, read along with the applicable version of R.C. 3937.18, allows for oral or documentary evidence to support an offer of UM/UIM coverage. This directly contradicts the holding in Linko, which states the four corners of the policy control in determining whether an offer of coverage was proper. Following the instruction provided by the Supreme Court in Kemper, this court will strictly apply the elements of Linko to the instant policy. If the offer of UM/UIM is invalid under Linko, then no presumption is created by a signed rejection.
 {¶ 34} The appellees' "selection form" briefly provides a description of the coverage provided fulfilling the first requirement ofLinko,
 {¶ 35} "UNINSURED/UNDERINSURED MOTORISTS INSURANCE COVERAGE
 {¶ 36} "Ohio Revised Code Section 3937.18 requires us to offer you Uninsured/Underinsured Motorists Insurance coverage in an amount equal to the policy limit(s) with respect to any motor vehicle registered or principally garaged in the State of Ohio, unless you reject such coverage.
 {¶ 37} "Unless you have previously rejected this coverage, your policy has been issued to include Uninsured/Underinsured Motorists Coverage at the limits(s) equal to the policy bodily injury liability limit(s).
 {¶ 38} "If you reject this coverage, your rejection shall extend to all supplemental or renewal policies, unless you subsequently request such coverage in writing.
 {¶ 39} "REDUCED LIMITS — Uninsured/Underinsured Motorists Insurance Coverage
 {¶ 40} "Ohio Revised Code Sections 3937.18 and 3937.181 require us to offer you limit(s) of liability for Uninsured/Underinsured Motorists Insurance Coverage which are less than the bodily injury liability limit(s) of the policy, but not less than the limit(s) required by the Ohio financial responsibility law.
 {¶ 41} "INSTRUCTIONS
 {¶ 42} "If you wish to act upon any of these offers mentioned above, please complete, as appropriate, the Selection Form below, detach and return to your agent or broker, who can also answer any questions about this message."
 {¶ 43} Next, the "selection form" names the insured, Praxair, Inc., along with a signature line for rejecting coverage or accepting reduced limits. The "selection form" was signed by Edward DeLoughy, Praxair's authorized representative, rejecting UM/UIM coverage. The selection form provides UM/UIM policy limits equal to liability limits. However, the premium for UM/UIM coverage or for reduced limits was not stated on the selection form, nor anywhere else in the policy, failing the second prong of Linko.
 {¶ 44} This court finds this policy to be ambiguous. The appellee fails to comply with the valid offering requirements set forth in Linko. We note the trial court ruled on the instant matter before the Supreme Court released its decision in Kemper. Finding additional guidance from the Supreme Court we must reverse.
 {¶ 45} This court holds that Pacific's "selection form" does not meet the requirements for a proper offer set forth by the Supreme Court in Linko;, therefore, UM/UIM coverage arises by operation of law. This court also finds that Kalista is an insured for the purposes ofScott-Pontzer.
 {¶ 46} Assignments of error 1 through 4 are upheld, assignment of error 5 is overruled. Summary judgment as a matter of law is premature since there are additional issues the trial court needs to address.
Judgment of the trial court is reversed and remanded for further proceedings consistent with this opinion.
ANN DYKE, P.J., AND ANTHONY O. CALABRESE, JR., J., CONCUR.
[1] The appellant's five assignments of error state:
I. The Trial Court Erred In Granting Summary Judgment In Favor Of Defendant-appellee Based On Its Holding That Defendant-appellee's Insured Had Rejected Uninsured/underinsured Coverage.
II. The Trial Court Erred When It Declared That The Requirements Set Out In Linko Did `not Apply To This Case' Relying On The Unreported 9th District Case Of Martinez v. Travelers Insurance Co. Which Is No Longer Good Law In Light Of The Supreme Court's Ruling In Kemper v. MichiganMutual.
III. The Trial Court Erred In Holding That Plaintiff-appellant Was Not Entitled To Uninsured/underinsured Motorist Coverage Under The Defendant-appellee's Business Auto Policy.
IV. The Trial Court Erred In Holding That Plaintiff-appellant Failed To Rebut R.C. 3937.18(C)'S Presumption Of A Valid Offer.
V. The Trial Court Erred In Denying Cross-motion Of Plaintiff-appellant For Summary Judgment.