OPINION
{¶ 1} The defendant-appellant, Lincoln General Insurance Company ("Lincoln General"), appeals the November 26, 2002 judgment of the Common Pleas Court of Allen County, Ohio, granting summary judgment in favor of the plaintiff-appellees, Mark and Martha Strayer, and overruling its motion for summary judgment.
 {¶ 2} On September 2, 1999, Mark Strayer was involved in an automobile accident. This accident was caused by the negligence of Matthew Williams, who was insured by State Farm Mutual Automobile Insurance Company. At the time of the collision, Strayer was employed by A.L. Smith Trucking, Inc., and was driving a company owned vehicle while acting in the course and scope of his employment. Strayer's employer was insured under a commercial automobile liability policy by Lincoln General, which was in effect on the date of his accident. This policy provided a limit of $1,000,000 for bodily injury liability with uninsured/underinsured motorists' ("UM/UIM") coverage selected at a lower limit in the amount of $25,000. In choosing this lower coverage, the corporation's secretary, David Fullenkamp, signed a rejection form for UM/UIM coverage equal to the liability policy limits on behalf of the company and expressly chose the lower coverage. However, this form did not set forth the premium for UM/UIM coverage.
 {¶ 3} The Strayers settled with the tortfeasor for his bodily injury liability policy limit of $100,000. In addition, the Strayers filed a claim for underinsured motorist coverage under Lincoln General's policy of insurance with A.L. Smith Trucking, Inc. Lincoln General denied coverage, and the Strayers filed a complaint against Lincoln General on August 22, 2001, in the Allen County Common Pleas Court. Thereafter, Lincoln General filed its answer and a counterclaim for declaratory judgment, requesting that the court find that the pertinent policy limit for UM/UIM coverage was $25,000 and that the Strayers were not entitled to coverage because the amount was less than the amount paid by the tortfeasor.
 {¶ 4} Motions for summary judgment regarding coverage were filed by both Lincoln General and the Strayers. On November 26, 2002, the trial court overruled Lincoln General's motion for summary judgment and granted summary judgment in favor of the Strayers, determining that Lincoln General had failed to provide a valid offer of UM/UIM coverage to A.L. Smith Trucking, Inc., as required by former R.C. 3937.18. Thus, the trial court held that such coverage arose by operation of law with a limit of $1,000,000, the policy limit under the liability coverage. This appeal followed, and Lincoln General now asserts one assignment of error.
 {¶ 5} The Trial Court erred to the prejudice of defendant-appellant in overruling its Motion for Summary Judgment and in granting plaintiff-appellee's Cross-Motion for Summary Judgment.
 {¶ 6} The standard for review of a grant of summary judgment is one of de novo review. Lorain Natl. Bank v. Saratoga Apts. (1989),61 Ohio App.3d 127, 129. Thus, such a grant will be affirmed only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). In addition, "summary judgment shall not be rendered unless it appears * * * that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence construed most strongly in his favor." Id.
 {¶ 7} The moving party may make his motion for summary judgment in his favor "with or without supporting affidavits[.]" Civ.R. 56(B). However, "[a] party seeking summary judgment must specifically delineate the basis upon which summary judgment is sought in order to allow the opposing party a meaningful opportunity to respond." Mitseff v. Wheeler
(1988), 38 Ohio St.3d 112, syllabus. Summary judgment should be granted with caution, with a court construing all evidence and deciding any doubt in favor of the nonmovant. Murphy v. Reynoldsburg (1992),65 Ohio St.3d 356, 360. Once the moving party demonstrates that he is entitled to summary judgment, the burden then shifts to the non-moving party to show why summary judgment in favor of the moving party should not be had. See Civ.R. 56(E). In fact, "[i]f he does not so respond, summary judgment, if appropriate, shall be entered against him." Id.
 {¶ 8} In the case sub judice, the parties do not dispute the relevant facts. Their controversy concerns whether a valid offer of UM/UIM coverage was given and rejected, thus limiting the amount of coverage to $25,000, or whether there was not a valid offer and rejection, which would provide coverage by operation of law with a limit of $1,000,000. Thus, this Court need only determine whether either party was entitled to judgment as a matter of law.
 {¶ 9} Our analysis of this issue begins by noting that the relevant statute at issue in this case, R.C. 3937.18, has undergone numerous changes since it was enacted in 1965, including specific amendments in 1997 and 2001. However, the statutory law in effect on the date of each new policy period is the law to be applied to claims arising during that policy period. Wolfe v. Wolfe (2000), 88 Ohio St.3d 246,250, citing Ross v. Farmers Ins. Group (1998), 82 Ohio St.3d 281, 287.
 {¶ 10} The policy at issue in this case was in effect from April 1, 1999, to April 1, 2000. At that time, R.C. 3937.18 as it was written prior to the 2001 amendments was the applicable version regarding offers of UM/UIM coverage. Although the 2001 amendments no longer require insurance companies to provide UM/UIM coverage, the statute, as it existed at the time of the issuance of the policy in the case sub judice, mandated that insurance companies offer UM/UIM coverage with every motor vehicle liability policy delivered or issued for delivery in Ohio. However, a named insured could expressly reject such coverage and/or obtain UM/UIM coverage with a lower limit. See Abate v. PioneerMut. Cas. Co. (1970), 22 Ohio St.2d 161; former R.C. 3937.18(C).
 {¶ 11} In 1996, the Ohio Supreme Court determined that "[t]here can be no rejection pursuant to R.C. 3937.18(C) absent a written offer of uninsured motorist coverage from the insurance provider." Gyori v.Johnston Coca-Cola Bottling Group, Inc. (1996), 76 Ohio St.3d 565, paragraph one of the syllabus. Further, the failure to properly offer or reject UM/UIM coverage results in coverage by operation of law with the limit equal to that of the liability provision. Id. at 567. Subsequently, in 2000, the Court concluded that in order to determine whether a valid rejection has been made, there must be a proper written
offer. Linko v. Indemnity Ins. Co. of N. Am. (2000), 90 Ohio St.3d 445,449. Thus, "[t]o satisfy the offer requirement of R.C. 3937.18, the insurer must inform the insured of the availability of UM/UIM coverage, set forth the premium for UM/UIM coverage, include a brief description of the coverage, and expressly state the UM/UIM coverage limits in its offer[.]" Id. at 447-448. However, Linko involved an insurance policy in effect prior to the 1997 amendment to R.C. 3937.18. Thus, the issue in the present case arose.
 {¶ 12} The case sub judice involves the 1997 amendment to R.C.3937.18. The pertinent language of that section reads as follows: A namedinsured or applicant may reject or accept both coverages [UM/UIM] asoffered under division (A) of this section, or may alternatively selectboth such coverages in accordance with a schedule of limits approved bythe superintendent. The schedule of limits * * * may permit a namedinsured or applicant to select [UM/UIM] coverages with limits on suchcoverages that are less than the limit of liability coverage provided bythe automobile liability or motor vehicle liability policy of insuranceunder which the coverages are provided * * * A named insured's orapplicant's written, signed rejection of both coverages as offered underdivision (A) of this section, or a named insured's or applicant'swritten, signed selection of such coverages * * * shall create apresumption of an offer of coverages consistent with division (A) of thissection[.]
 {¶ 13} Based on this language, Lincoln General asserts that the rejection form signed by Fullenkamp on behalf of the corporation was sufficient to establish a valid offer and rejection thereof, limiting coverage to $25,000. In support of this argument and to distinguish the Supreme Court's holding in Linko regarding what constitutes a meaningful offer, Lincoln General contends that the requirements for a valid offer established in Linko pertained to policies issued prior to the 1997 amendments, which did not include a presumption of a valid offer when the named insured signed a written rejection form, and that the 1997 amendments eliminated Linko's requisites.
 {¶ 14} The trial court disagreed with Lincoln General's position based upon a 2002 decision issued by this Court and found that UM/UIM coverage arose in this case by operation of law with a limit of $1,000,000, the amount of the liability limits. See Shindollar v. ErieIns. Co., 148 Ohio App.3d 537, 2002-Ohio-2971. In Shindollar, we held "that the 1997 amendments did not alter Linko's requirements for a valid offer of UM/UIM coverage[.]" Id. at 541. However, the trial court's decision in the case sub judice was issued on November 26, 2002, while the following two certified issues were pending in the Ohio Supreme Court:
 {¶ 15} (1) Are the requirements of Linko v. Indemnity Ins. Co., [2000], 90 Ohio St.3d [445, 739 N.E.2d 338], relative to an offer of UM/UIM coverage, applicable to a policy of insurance written after enactment of [1997] HB 261 and before [2001] SB 97?
 {¶ 16} (2) If the Linko requirements are applicable, does, under [1997] HB 261, a signed rejection act as an effective declination of UM/UIM coverage, where there is no other evidence, oral or documentary, of an offer of coverage?
 {¶ 17} Kemper v. Michigan Millers Mut. Ins. Co., 98 Ohio St.3d 162,2002-Ohio-7101, at ¶¶ 2-3. On December 24, 2002, the Supreme Court answered in the affirmative to the first question and in the negative to the second question. Id. at ¶ 4. However, a motion to reconsider was filed by Michigan Millers, and Lincoln General elected to appeal the trial court's decision to this Court in the event that the reconsideration motion was granted.
 {¶ 18} In its brief to this Court, filed on February 25, 2003, Lincoln General conceded that the Supreme Court's holding in Kemper, was "directly contrary" to its current position because the rejection form signed by Fullenkamp did not set forth the premium for UM/UIM coverage. However, it chose to continue with this appeal, evidently hoping that the high Court would reconsider the Kemper decision. On March 19, 2003, the Supreme Court denied Michigan Millers' motion for reconsideration. Kemperv. Michigan Millers Ins. Co., 98 Ohio St.3d 1492, 2003-Ohio-1189.
 {¶ 19} Linko requires that the premium for UM/UIM coverage be provided in written form to the named insured. Linko,90 Ohio St.3d at 447-448. Kemper established that this requirement applies to a policy of insurance written after enactment of the 1997 amendments and before the 2001 amendments and that a signed rejection is not an effective declination of UM/UIM coverage, where there is no other evidence, oral or documentary, of a valid offer of coverage. Kemper, 2002-Ohio-7101, at ¶¶ 2-4. Further, neither party disputes that the rejection form in this case did not set forth the premium for UM/UIM coverage. Thus, there was not a valid offer and rejection of UM/UIM coverage. As such, this coverage arises by operation of law with a limit equal to the amount of the liability policy's limit, $1,000,000. Therefore, the assignment of error is overruled.
 {¶ 20} For these reasons, the judgment of the Common Pleas Court of Allen County, Ohio, is affirmed.
Judgment affirmed.
WALTERS, J., and CUPP, J., concur.