Pfeifer, J.
Our responses to the questions of the federal court are as follows: (1) Yes. An insured under an automobile liability policy may challenge the authority of a signatory to a UM/UIM coverage rejection form when such signatory’s authority is not disputed by the named insureds or insurer; (2) No. To satisfy the offer requirement of R.C. 3937.18, the insurer must inform the insured of the availability of UM/UIM coverage, set forth the premium for *448 UM/UIM coverage, include a brief description of the coverage, and expressly state the UM/UIM coverage limits in its offer; (3)(a) Yes. Separately incorporated named insureds must each be listed in a rejection form in order to satisfy the offer. requirement of R.C. 3937.18; (3)(b) The four corners of the insurance agreement control in determining whether waiver was knowingly and expressly made by each of the named insureds; (3)(e) The question is moot due to our response to (3)(b); and (3)(d) No. Only with a subsidiary’s written authorization may a parent corporation reject UM/UIM coverage on the subsidiary’s behalf.
The federal court’s questions and this court’s complete responses are set forth below.
Question 1
“Whether an insured under an automobile liability policy may challenge the authority of a signatory to an uninsured/underinsured motorist coverage rejection form when such signatory’s authority is not disputed by the named insureds or insurer.”
Our response is in the affirmative. As was the case with the plaintiff in Gyori v. Johnston Coca-Cola Bottling Group, Inc. (1996), 76 Ohio St.3d 565, 669 N.E.2d 824, the plaintiff here was not a named insured but seeks a declaration of whether the employer expressly and knowingly rejected UM/UIM coverage for its employees. The validity of the employer’s alleged rejection is at the heart of both cases. The plaintiff in Gyori had standing to bring an action to resolve that issue, as does the plaintiff in this case.
Question 2
“Whether the language of the uninsured/underinsured motorist coverage rejection forms accompanying the subject automobile liability policy satisfies] the offer requirements of R.C. 3837.18 [sic, 3937.18].”
We find that the rejection form in this ease fails to satisfy the offer requirements of former R.C. 3937.18(C) as it existed during the policy period. See 145 Ohio Laws, Part I, 211. The pertinent portion of the Indemnity policy reads:
“Ohio Revised Code Section 3937.18 requires us to offer you Uninsured/Under-insured Motorists Insurance coverage in an amount equal to the policy bodily injury liability limit(s) with respect to any motor vehicle registered or principally garaged in the State of Ohio, unless you reject such coverage.
“Unless you have previously rejected this coverage, your policy has been issued to include Uninsured/Underinsured Motorists Insurance coverage at limit(s) equal to the policy bodily injury liability limit(s).”
In Gyori, this court held that “[t]here can be no rejection pursuant to R.C. 3937.18(C) absent a written offer of uninsured motorist coverage from the *449 insurance provider.” Id., 76 Ohio St.3d 565, 669 N.E.2d 824, paragraph one of the syllabus. Gyori stands for the proposition that we cannot know whether an insured has made an express, knowing rejection of UIM coverage unless there is a written offer and written rejection. It only follows that a valid rejection requires a meaningful offer, i.e., an offer that is an offer in substance and not just in name.
The above paragraph in the Indemnity contract that purports to be an offer states the law, but does not contain the information necessary to make it a meaningful offer. Since Gyori, Ohio’s appellate courts have developed a useful body of law regarding what constitutes a valid offer of UM/UIM coverage. We agree with the following required elements for written offers imposed by Ohio appellate courts: a brief description of the coverage, the premium for that coverage, and an express statement of the UM/UIM coverage limits. See Murray v. Woodard (1997), 120 Ohio App.3d 180, 697 N.E.2d 265 (interpreting the offer requirement of R.C. 3937.181); Gibson v. Westfield Natl. Ins. Co. (July 14, 1998), Monroe App. No. 788, unreported, 1998 WL 404201; Weddle v. Hayes (Sept. 5, 1997), Belmont App. No. 96-BA-44, unreported, 1997 WL 567964.
Indemnity’s alleged offer is complete only in its incompleteness. It does not describe the coverage, does not list the premium costs of UM/UIM coverage, and does not expressly state the coverage limits. We find that an offer must include those three elements. The Indemnity rejection form, lacking in that required information, thus could not be termed a written offer that would allow an insured to make an express, knowing rejection of the coverage.
Question 3(a)
‘With regard to the scope and validity of the uninsured/underinsured motorist coverage rejection forms:
“a. Whether each of several separately-incorporated named insureds must be expressly listed in the rejection form in order to satisfy the requirement that the waiver be made knowingly, expressly, and in writing by each named insured.”
According to long-established Ohio law, UM/UIM coverage can be removed from an insurance policy “only by the express rejection of that provision by the insured.” Abate v. Pioneer Mut. Cas. Co. (1970), 22 Ohio St.2d 161, 51 O.O.2d 229, 258 N.E.2d 429, paragraph one of the syllabus. That fits with the language of R.C. 3937.18(C), which gives the power to the “named insured” to accept or reject UM/UIM coverage. Here, we find by necessary implication that an incorporated entity that is a named insured must be specifically offered the insurance itself before its authorized representative can refuse coverage.
While a parent corporation may have a close relationship with its subsidiary, the two remain separate and distinct legal entities. North v. Higbee Co. (1936), *450 131 Ohio St. 507, 6 O.O. 166, 3 N.E.2d 391. An offer to the parent does not per se constitute an offer to the subsidiary. Without the name of the entity on the selection form, no offer of UM/UIM coverage has been made to that entity.
Question 3(b)
‘When, on its face, a rejection form was signed by the employee of only one of several separately-incorporated named insureds listed in the policy, whether the four corners of the insurance agreement control in determining whether the waiver was knowingly and expressly made by each of the named insureds, or does the parties’ intent, established by extrinsic evidence, control?”
We conclude that the four corners of the insurance agreement control in determining whether the waiver was knowingly and expressly made by each of the named insureds. Again, we cite Gyori, which requires a written offer and a written rejection of UM/UIM coverage. In Gyori this court made it clear that the issue of whether coverage was offered and rejected should be apparent from the contract itself. This court stated that the requirement of written offers “will prevent needless litigation about whether the insurance company offered UM coverage.” Id., 76 Ohio St.3d at 568, 669 N.E.2d at 827. By requiring an offer and rejection to be in writing, this court impliedly held in Gyori that if the rejection is not within the contract, it is not valid. In doing so, this court greatly simplified the issue of proof in these types of cases — the offer and rejection are either there or they are not. Extrinsic evidence is not admissible to prove that a waiver was knowingly and expressly made by each of the named insureds.
Question 3(c)
Our response to Question 3(b) makes it unnecessary to answer Question 3(c).
Question 3(d)
“d. Whether a parent corporation has implied authority to waive coverage on behalf of its separately-incorporated subsidiary corporation when the subsidiary corporation did not provide written authorization to waive un/underinsured motor[ist] coverage benefits on its behalf prior to commencement of the policy?”
Gyori addresses how unwritten representations evade R.C. 3937.18’s mandate that rejections of UM/UIM coverage must be express and knowing. Thus, we required in Gyori that both offers and rejections of UM/UIM coverage be in writing. Id. at paragraphs one and two of the syllabus. We would contradict Gyori were we to allow a corporate parent to claim a rejection of UM/UIM coverage by its subsidiary through the subsidiary’s implied, unwritten assent thereto. We thus require that a subsidiary’s authorization to a parent corpora *451 tion to waive UM/UIM coverage benefits on its behalf must be in writing and must be incorporated into the contract.

Judgment accordingly.

Douglas, Resnick and F.E. Sweeney, JJ., concur.
Moyer, C.J., Cook and Lundberg Stratton, JJ., concur in part and dissent in part.