DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Sandusky County Court of Common Pleas. The material facts in this cause are as follows.
 {¶ 2} On December 6, 1998, Kathy Armbruster was killed in a motor vehicle collision caused by Eugene Heinemann. Anna Armbruster, Kathy's daughter, was also injured in the collision. Appellant is Charles Armbruster, the surviving spouse of Kathy Armbruster and the father of Anna Armbruster. In his capacity as the executor of Kathy's estate, appellant filed a wrongful death suit in the Sandusky Court of Common Pleas, Probate Division.
 {¶ 3} On October 14, 1999, appellant settled Anna's personal injury claim and his wrongful death claim with the tortfeasor's insurer for a total of $100,000. Appellant also filed an uninsured/underinsured (UM/UIM) claim against his own motor vehicle insurer. On December 8, 1999, the probate court approved the settlement of this claim and ordered the distribution of the $400,000 received by appellant from his insurer.
 {¶ 4} At the time of the fatal accident, appellant was employed by Libbey-Owens-Ford Co., a division of Pilkington Holdings, Inc. ("Pilkington"). Pilkington had a commercial motor vehicle liability policy with appellee, Hartford Fire Insurance Company ("Hartford"), which, as a renewal policy, was effective from April 1, 1998 to April 1, 1999. The limit of liability for each "accident" under this policy was $2 million.
 {¶ 5} For previous policy periods commencing on April 1, 1995 and April 1, 1996, Pilkington rejected, in writing, Hartford's offer of UM/UIM coverage. The offer/rejection forms are identical for both periods. They each state that UM/UIM coverage applies to all vehicles covered in the Hartford policy. The forms also provide:
 {¶ 6} "Uninsured Motorists Coverage pays benefits for bodily injury, sickness or disease, including death, caused by an uninsured driver, or an insured driver whose bodily injury insurance limit is inadequate to cover bodily injury losses you are entitled to recover as damages."
 {¶ 7} The forms recommend a UM/UIM coverage limit equal to Hartford's motor vehicle liability insurance limit, but no lower than "the Financial Responsibility Limit of Ohio." The offers also state that Pilkington could reject UM/UIM coverage in its entirety. The forms also apprise the insured of the following:
 {¶ 8} "Please be sure to read, fill out, sign and return this Supplemental Application to your Hartford agent or broker if you wish to elect an optional Uninsured Motorist Coverage limit, or to reject coverage entirely. The choice you make will apply to any policy which renews, changes, supersedes or replaces your existing policy or any policy for which you may be applying, unless you request a change to your coverage in writing."
 {¶ 9} Both forms indicate that Pilkington rejected UM/UIM coverage "entirely."
 {¶ 10} Pilkington also held an umbrella liability insurance policy issued by CGU International Insurance, PLC ("CGU"). It is undisputed that Pilkington was not offered UM/UIM coverage under the CGU policy.
 {¶ 11} In October 1999, appellant submitted underinsured motorist claims to CGU and Hartford. Both claims were rejected. Therefore, appellant instituted the present action, asking the trial court to determine his rights under the CGU and Hartford insurance policies. Appellant urged that under the Ohio Supreme Court's decision inScott-Pontzer v. Liberty Mut. Fire Ins. Co. (1999), 85 Ohio St.3d 660, he was entitled to UM/UIM coverage under his employer's commercial motor vehicle liability policy and umbrella policy.
 {¶ 12} The case sub judice was, for a period, removed to the United States District Court for Northern Ohio, Western Division. During that time, appellant, CGU, and Pilkington filed motions for summary judgment. The federal court then remanded the case to the Sandusky County Court of Common Pleas based upon a lack of jurisdiction.
 {¶ 13} CGU's motion for summary judgment was predicated on the fact that its umbrella policy was negotiated, issued, delivered, and paid for in the United Kingdom. Further, CGU asserted that the place of performance and subject matter of the policy were in the United Kingdom. Finally, CGU maintained that any benefits paid under the policy would be paid to Pilkington in the United Kingdom. CGU therefore claimed that, in applying Ohio's choice of law rules for contract actions, the law of the United Kingdom, not Ohio, must be utilized in this cause. Because the United Kingdom has no law comparable to Scott-Pontzer, CGU contended that a corporation's UM/UIM coverage is not extended to the corporation's employees.
 {¶ 14} The trial court agreed with CGU and granted its motion for summary judgment. On appeal, and despite the fact that CGU filed an appellee's brief, appellant fails to raise any error with regard to the basis of that decision. In fact, in his reply brief, appellant concedes that he assigns no error in regard to the trial court's grant of summary judgment to CGU "on the basis of choice of law." Therefore, the lower court's grant of summary judgment to CGU must be affirmed.
 {¶ 15} In its motion for summary judgment, Hartford asserted that Pilkington's written rejection of UM/UIM coverage was valid under R.C.3937.18, as effective on September 3, 1997. Thus, UM/UIM coverage was not available to appellant under Pilkington's commercial motor vehicle liability policy. In the alternative, Hartford argued that appellant destroyed its subrogation rights and/or that appellant's claim was barred by a lack of prompt notice.
 {¶ 16} On the other hand, appellant contended, inter alia, that the Ohio Supreme Court's decision in Linko v. Indem. Ins. Co. of N. Am.
(2000), 90 Ohio St.3d 445 was applicable to the case under consideration. Appellant claimed that, under the standard set forth inLinko, Pilkington's rejection of UM/UIM coverage was invalid.
 {¶ 17} In granting Hartford's summary judgment and denying appellant's motion for summary judgment, the trial judge found that applying Linko retrospectively would impair Hartford's "vested contractual rights without due process of law." She then determined that this ruling rendered Hartford's "impairment of subrogation rights" and "prompt notice" arguments moot.
 {¶ 18} Appellant appeals this judgment and asserts that the following errors occurred in the proceedings below:
 {¶ 19} "1. The trial court erred by failing to apply the standards set forth in Linko v. Indemnity Ins. Co. of North America (2000),90 Ohio St.3d 445 for an effective rejection of Uninsured/Underinsured motorists coverage."
 {¶ 20} "2. The trial court erred in deny [sic] plaintiff/appellant's motion for summary judgment."
 {¶ 21} In reviewing a trial court's grant or denial of a motion for summary judgment, an appellate court applies the same standard used by the trial court. McConville v. Jackson Comfort Sys., Inc. (1994),95 Ohio App.3d 297, 301. To prevail on a motion for summary judgment, the movant must demonstrate that there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C).
 {¶ 22} The gist of appellant's first and second assignments of error is that, pursuant to Linko, Pilkington's rejection of UM/UIM coverage is invalid; therefore, appellant, as an insured under the Hartford policy pursuant to Scott-Pontzer, acquires UM/UIM coverage by operation of law.
 {¶ 23} Initially, we find that the trial court erred in finding that Linko should not be applied retrospectively to this cause because it would impair Hartford's vested contractual right. The Ohio Supreme Court's interpretation of UM/UIM legislation does not establish any substantive rights to which an insurer can claim a vested right. SeeCartwright v. The Maryland Ins. Group (1995), 101 Ohio App.3d 439, 443. Of greater importance is the fact that there is no retroactive application at issue here. In Linko, the Ohio Supreme Court did not announce a new rule of law. Instead, it simply determined what R.C. 3937.18
"has meant since its enactment." See Agee v. Russell (2001),92 Ohio St.3d 540, 543 (applying this principle to the Ohio Supreme Court's interpretation of R.C. 2151.26).
 {¶ 24} Furthermore, a recent Ohio Supreme Court case, Kemper v.Michigan Millers, Inc. (2002), 98 Ohio St.3d 162, 2002-Ohio-7101, holds that the requirements for a meaningful offer of UM/UIM coverage are "applicable to a policy of insurance written after enactment of [1997] HB 261 and before [2001] SB 97." Id. at ¶ 2 and ¶ 4. See, also,Hartfield v. Toys "R" Us, 6th Dist. Nos. L-02-1218 and L-02-1228,2003-Ohio-2905. Accordingly, the trial court did err in granting summary judgment to Hartford on the basis that Linko was inapplicable to the case before us. Thus, appellant's first assignment of error is found well-taken.
 {¶ 25} In his second assignment of error, appellant urges that the trial court should have granted his motion for summary judgment because Hartford's offer/rejection forms do not comply with the requisites ofLinko. We agree, but only to the extent that Pilkington's rejection of UM/UIM coverage was invalid.
 {¶ 26} Finding that a meaningful rejection requires a meaningful offer, the Linko court set forth specific required elements for written offers. Id. at 449. The offer must contain (1) a brief description of the coverage; (2) the premium for that coverage; and (3) an express statement of the UM/UIM coverage limits. Id. at 447-448. In the instant case, the offer/rejection forms describe the UM/UIM coverage. Nonetheless, neither form provides the premium for that coverage. Additionally, the statements delineating coverage limits are too overbroad to be of any assistance to the insured in making a meaningful rejection of UM/UIM coverage. Specifically, the limits range from a high of $2 million to no less than the amount currently set forth in R.C. 4905.01(K). We therefore conclude that the offers of UM/UIM coverage by Hartford do not satisfy the Linko
requirements.
 {¶ 27} Based on the foregoing, the trial court should have granted partial summary judgment to appellant on the Linko question only, and appellant's second assignment of error is found well-taken.
 {¶ 28} Notwithstanding this finding, Hartford raises, pursuant to R.C. 2502.02, a cross-appeal to prevent reversal of the final judgment in its favor. Hartford argues that it was entitled to summary judgment on either or both of the other two issues, impairment of Hartford's subrogation rights and lack of prompt notice, raised in its motion for summary judgment. These questions were deemed moot and not considered by the trial court. We therefore decline to consider them for the first time on appeal. See Murphy v. Reynoldsburg (1992), 65 Ohio St.3d 356, 360. Rather, we leave the resolution of these issues to the lower court on remand.
 {¶ 29} On consideration whereof, the judgment of the Sandusky County Court of Common Pleas is affirmed as to the grant of summary judgment to CGU International Insurance, PLC, and is reversed as to the grant of summary judgment to Hartford Fire Insurance Company. This cause is remanded to that court for further proceedings consistent with this judgment. Hartford Fire Insurance Company is ordered to pay the costs of this appeal.
JUDGMENT AFFIRMED IN PART AND REVERSED IN PART.
Arlene Singer, J., concurs.