DECISION AND JUDGMENT ENTRY
{¶ 1} This case is before the court on appeal from the January 23, 2002 decision of the Ottawa County Court of Common Pleas which granted partial summary judgment to appellees, Liberty Mutual Fire Insurance Company and Travelers Property Casualty, on the issue of UM/UIM coverage.
 {¶ 2} The following facts are relevant to this appeal. On November 30, 1999, appellant, Earlin L. Daugherty, was a passenger in an automobile owned and operated by Mary L. Hamilton when she negligently went left of center and collided with a tractor-trailer rig. Hamilton was killed in the collision and appellant sustained serious injuries.
 {¶ 3} At the time of the collision, Hamilton had a liability insurance policy with a limit of $12,500. Appellant, who resided with his father and mother, Donald and Judy Daugherty, was covered under an automobile insurance policy issued by defendant-appellant, Safeco Insurance Company ("Safeco"). Mrs. Daugherty was employed by H.J. Heinz Co. ("Heinz") which maintained business auto and commercial general liability policies with Liberty Mutual Fire Insurance Company ("Liberty") each with limits of $2,000,000. Appellant was employed by Signature Label, Inc. which maintained, with Travelers Insurance Company ("Travelers"), a business auto policy and umbrella policy with limits of $1,000,000 and $2,000,000, respectively.
 {¶ 4} On January 31, 2000, appellant commenced the instant action against, inter alia, Safeco and Travelers. An amended complaint was filed August 21, 2001, and Liberty was added as a defendant. As to Travelers and Liberty, appellant requested that the court declare that uninsured and underinsured motorist coverage, medical payments and other coverages were available to him under the policies pursuant to (though not expressly stated) Scott-Pontzer v. Liberty Mut. Fire Ins. Co. (1999),85 Ohio St.3d 660. Cross-claims were filed among the insurance companies requesting that the court declare the rights and responsibilities of the parties and determine each party's pro rata share.
 {¶ 5} Numerous motions for summary judgment were filed. On January 23, 2002, the trial court filed its decision. Appellant's and Safeco's motions were denied. As to Travelers and Liberty, the court found that no UM/UIM coverage was available and granted their motions.
 {¶ 6} Specifically, as to Travelers, the court found that because the language of the Travelers' business auto policy had language limiting UM/UIM coverage to "owned autos," coverage was not available because the vehicle involved in the accident was not owned by Signature Label. As to Travelers' umbrella policy, the court found that Signature Label properly rejected UM/UIM coverage. As to Liberty, the trial court concluded that Heinz was self-insured in a practical sense" because the limits of liability in the Liberty policy mirrored the deductible. Thus, the court concluded that Liberty was not subject to the requirements of R.C. 3937.18.
 {¶ 7} The cause then proceeded to a bench trial wherein the court returned a final judgment in favor of appellant in the amount of $400,000. This appeal followed and is limited to the trial court's award of summary judgment in favor of Travelers and Liberty.
 {¶ 8} Appellant, Earlin Daugherty, raises the following assignments of error:
 {¶ 9} "I. The trial court erred to the prejudice of appellant, Earlin Daugherty, in entering partial summary judgment in favor of defendant-appellee, Liberty Mutual Insurance Company, on Mr. Daugherty's asserted underinsured motorist claim when it ruled there was no underinsured motorist coverage available under policy numbers AS2-681-00465-548 (business auto policy) and RG2-681-004065-228 (general liability policy).
 {¶ 10} "II. The trial court erred to the prejudice of appellant, Earlin Daugherty, in entering final judgment in favor of defendant-appellee, Travelers, and against plaintiff-appellant, Earlin Daugherty, on Mr. Daugherty's asserted underinsured motorist claim when it ruled there was no underinsured motorist coverage available under policy numbers Y-810-103D9501-TIL-99 (commercial auto policy) and YSM-CUP-992G961-9-TIL-99 (commercial excess liability {umbrella} insurance policy)."
 {¶ 11} Defendant-appellant, Safeco, sets forth the following assignments of error:
 {¶ 12} "I. The trial court erred as a matter of law when it granted summary judgment to defendant-appellee Travelers Property Casualty.
 {¶ 13} "A. Travelers' "other owned vehicle" exclusion does not apply to Plaintiff-Appellant and therefore U.M./U.I.M. coverage is available.
 {¶ 14} "B. The trial court erred when it determined that Travelers' rejection form conforms to the requirements of H.B. 261.
 {¶ 15} "II. The trial court erred as a matter of law when it granted summary judgment to defendant-appellee Liberty Mutual Fire Insurance Company."
 {¶ 16} Appellants' assignments of error assert essentially the same bases for relief and will be addressed concurrently. The alleged error as to Liberty will be discussed first.
 {¶ 17} At the outset we note that an appellate court reviews a trial court's ruling on a summary judgment motion de novo.Conley-Slowinski v. Superior Spinning Stamping Co. (1998),128 Ohio App.3d 360, 363. To succeed on a Civ.R. 56(C) motion for summary judgment, the movant must demonstrate that:
 {¶ 18} "(1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor." Zivich v. Mentor SoccerClub, Inc. (1998), 82 Ohio St.3d 367, 369-370, citing Horton v. HarwickChem. Corp. (1995), 73 Ohio St.3d 679.
 {¶ 19} Appellants argue that the trial court erred in granting Liberty summary judgment as a matter of law because Heinz was not self-insured "in a practical sense" and, thus, was subject to the requirements of R.C. 3937.18. Appellants further contend that Heinz did not validly reject UM/UIM coverage.
 {¶ 20} The version of R.C. 3937.18, in effect at the time of the effective date of the Liberty business auto and commercial general liability policies, December 31, 1998 to December 31, 1999, was amended by H.B. 261 and provides, in part:
 {¶ 21} "(A) No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless both of the following coverages are offered to persons insured under the policy for loss due to bodily injury or death suffered by such insureds:
 {¶ 22} "(1) Uninsured motorist coverage, * * *.
 {¶ 23} "(2) Underinsured motorist coverage, * * *."
 {¶ 24} Appellants contend that the trial court erred in finding that Heinz is self-insured and that the Liberty policy is not subject to the requirements of R.C. 3937.18. Particularly, appellants argue that because the business auto policy contains a bankruptcy clause,[1] Heinz does not bear the entire risk of loss and, thus, cannot be considered self-insured. Appellants further argue that Heinz failed to comply with the statutory requirements for self-insurers.
 {¶ 25} This court has recently held that where an employer's insurance policy includes a total deductible amount that is equal to the policy limits, the employer is "self-insured in the practical sense" and not subject to the R.C. 3937.18 requirements. Kohntopp v. Hamilton Mut.Ins. Co., 6th Dist. No. WD-02-033, 2003-Ohio-2793. Accord Hartfield v.Toys "R" Us, 6th Dist. Nos. L-02-1218, L-02-1228; 2003-Ohio-2905. This court also concluded that failure to comply with R.C. 4509.45, absent a legislative determination specifically as to its applicability to fronting agreements, was not critical. Further, the Kohntopp policy contained a bankruptcy clause nearly verbatim to the one at issue; it also contained, as in the present case, an endorsement indicating that the insurer would pay claims at its discretion and that all costs incurred in seeking recovery against a third party would be charged against the deductible.[2] This endorsement, coupled with the coverage and matching deductible, demonstrate that, as in Kohntopp, the risk of loss never shifted from Heinz. Accordingly, Heinz is in a "practical sense" self-insured and R.C. 3938.18 and Scott-Pontzer are inapplicable.
 {¶ 26} Based on the foregoing, appellant Earlin Daugherty's first assignment of error and appellant Safeco's second assignment of error are not well-taken and are therefore denied.
 {¶ 27} Appellants also contend that the trial court erred as a matter of law in granting Travelers' motion for summary judgment. In its January 23, 2002 decision, the court found that because the declarations page of the primary policy included only owned autos, UM/UIM coverage was not available. As to the umbrella policy, the court found that Signature Label properly rejected UM/UIM coverage.
 {¶ 28} The primary Travelers' policy (policy no. Y-810-103D9501-TIL-99) effective February 15, 1999 through February 15, 2000, lists Signature Label as the named insured. It is undisputed that via Scott-Pontzer the policy covers appellant Daugherty as an employee of the company. The declarations page of the policy identifies the "Covered Auto Symbol" as symbol "2" for UM/UIM coverage. Symbol "2" is defined in the "Business Auto Coverage Form" as follows:
 {¶ 29} "2 = OWNED `AUTOS' ONLY. Only those `autos' you own (and for Liability Coverage any `trailers' you don't own while attached to power units you own). This includes those `autos' you acquire ownership of after the policy begins."
 {¶ 30} The "Business Auto Coverage Form" further provides:
 {¶ 31} "Throughout this policy the words `you' and `your' refer to the Named Insured shown in the Declarations. The words `we,' `us' and `our' refer to the Company providing this insurance."
 {¶ 32} For UM/UIM coverage the policy defined "insured" as follows:
 {¶ 33} "B. Who Is An Insured
 {¶ 34} "1. You.
 {¶ 35} "2. If you are an individual, any `family member'."
 {¶ 36} Appellants contend that because appellant Daugherty was an "insured person" rather than a "named insured" the exclusionary language does not apply to him. For this proposition, appellants rely on this court's case captioned Kasson v. Goodman, 6th Dist. No. L-01-1432,2002-Ohio-3022. Appellee contends that Kasson is inapplicable in that the disputed language is not "exclusionary language, but rather language upon which UM/UIM is conditioned." (Emphasis in original.) We find the alleged distinction merely a matter of semantics.
 {¶ 37} In Kasson, Sharon Kasson and her daughter were injured when their vehicle was struck by a negligently operated vehicle. Kasson sought UM/UIM coverage from her employer's business auto and umbrella policies. The trial court found that coverage was available under the policies. Affirming the trial court, this court reasoned:
 {¶ 38} "B. Exclusions
 {¶ 39} "We must now determine whether any of the exclusions in the auto policy apply to preclude coverage. CIC first refers to the business auto declarations which lists that the `covered autos,' for purposes of UM/UIM coverage, as symbol `7'. Symbol `7' is defined in the Business Auto Coverage Form as:
 {¶ 40} "`SPECIFICALLY DESCRIBED "AUTOS".
 {¶ 41} "Only those "autos" described in ITEM THREE of the Declarations for which a premium charge is shown (and for Liability Coverage any "trailers" you don't own while attached to any power unit described in ITEM THREE).'
 {¶ 42} "Item three of the declarations provides a list of sixteen vehicles, by make and model, that are covered under the policy. Kasson's vehicle is not included.
 {¶ 43} "The definition of a covered auto corresponds with the `other-owned' vehicle exclusion contained in the uninsured coverage endorsement which relevantly provides:
 {¶ 44} "`C. Exclusions
 {¶ 45} "`This insurance does not apply to:
 {¶ 46} "`* * *
 {¶ 47} "`5. "Bodily injury" sustained by an "insured" while the "insured" is operating or occupying a motor vehicle owned by, furnished to, or available for the regular use of a named insured, a spouse or a resident relative of a named insured, if the motor vehicle is not specifically identified in the policy under which a claim is made, or is not a newly acquired or replacement motor vehicle covered under the terms of the policy under which the uninsured and underinsured motorist coverages are provided.'"
 {¶ 48} "Arguing that the `other-owned vehicle' exclusion precludes coverage, CIC disputes the trial court's finding that the `named insured' language in the exclusion applies only to those individuals explicitly set forth in the declarations page. In other words, the trial court found that while appellees were `insureds' based upon the ambiguity in the declarations page, they were not `named insureds' for purposes of the exclusion.
 {¶ 49} "Scott-Pontzer's holding states that if there is an ambiguity in the policy, the policy must be construed strictly against the insurer and liberally in favor of the insured. Scott-Pontzer at 664. The policy defines `you' as the `named insured' listed in the declarations. Because we have found `you' to be ambiguous as it pertains to the corporate named insureds, we, according to Scott-Pontzer, must construe who is a `named insured' more strictly. Thus, we find that while appellees are insureds under the auto policy, they are not `named insureds' and the C5 exclusion does not apply. Accord Purvis v.Cincinnati Ins. Co., Greene App. No. 2001-CA-104, 2002-Ohio-1803. Accordingly, the trial court properly concluded that appellees are entitled to coverage under the auto policy."
 {¶ 50} Accord Giles v. Simonds, 7th Dist. No. 02-CO-18,2003-Ohio-1428.
 {¶ 51} Based on the foregoing, we conclude that while appellant Daugherty is an insured under the policy, he is not a "named insured" for purposes of the "other-owned auto" exclusion. Accordingly, we find that the trial court erred in finding that UM/UIM coverage was not available under Traveler's primary policy.
 {¶ 52} We must now determine whether the umbrella policy's UM/UIM rejection form, signed by Signature Label, conformed to the requirements of H.B. 261, the version of R.C. 3937.18 in effect at the time of the contract.
 {¶ 53} The Travelers' form to elect or reject coverage provides, in part:
 {¶ 54} "In accordance with the laws of Ohio, your excess umbrella policy shall automatically include coverages for damages for bodily injury which the Insured may be entitled to recover from the owner or operator of an uninsured or underinsured motor vehicle, at the same limits as the bodily injury liability policy limits, unless you reject such coverage or select lower limits as indicated below."
 {¶ 55} An agent of Signature Label checked the box which reads: "I wish to reject both Uninsured and Underinsured Motorist coverage on my excess or umbrella policy."
 {¶ 56} The parties dispute the viability of the requirements set forth in Linko v. Indemn. Ins. Co. of N. Am. (2000), 90 Ohio St.3d 445, as to what constitutes a knowing and express rejection of UM/UIM coverage, following the enactment of H.B. 261. Linko provides that in order for an insured to make an express and knowing rejection of UM/UIM coverage there must be "a brief description of the coverage, the premium for that coverage, and an express statement of the UM/UIM coverage limits." Id. at 449.
 {¶ 57} Travelers asserts that the H.B. 261 amendments to R.C.3937.18 superseded the Linko requirements. We disagree. The Ohio Supreme Court's recent decision in Kemper v. Michigan Millers Mut. Ins. Co.,98 Ohio St.3d 162, clearly provides that the Linko requirements are still viable following the enactment of H.B. 261 and prior to the effective date of S.B. 97.
 {¶ 58} Reviewing the present rejection form, it does not state the premium for UM/UIM coverage and fails to provide a description of UM/UIM coverage as required under Linko. Accordingly, under Travelers' umbrella policy UM/UIM coverage exists as a matter of law.
 {¶ 59} Based on the foregoing, appellant Daugherty's second assignment of error and appellant Safeco's first assignment of error are well-taken.
 {¶ 60} On consideration whereof, we find that substantial justice was not done the parties complaining and the decision of the Ottawa County Court of Common Pleas is reversed, in part, and affirmed, in part, and the case is remanded for further proceedings consistent with this decision. Costs of this appeal shall be evenly apportioned between appellants and appellee, Travelers.
JUDGMENT AFFIRMED IN PART AND REVERSED IN PART.
Knepper, J., concurs.
Lanzinger, J., concurs in part and dissents in part.
[1] The clause provides:
"Part VI — Conditions
"* * *
"J. Bankruptcy
"Bankruptcy or insolvency of the insured shall not relieve us of any obligations under this policy."
[2] The "Deductible Endorsement Automobile Coverage" provides:
"1. Our obligation to pay damages or `allocated loss adjustment expense' under Liability Coverage, or any other insurance afforded by this policy applies only to the amount of such damages and `allocated loss adjustment expense' combined that exceeds a deductible amount specified in Item 1 of the Schedule below because of all coverages combined, as the result of any one `accident'.
"However, the amount of the deductible applicable to this policy for any single `accident' shall be reduced by the amount which you have reimbursed us for deductible amounts we have advanced which are attributable to the same `accident' under any other policies specified in Item 2 of the Schedule below.
"2. We are obligated to pay only that portion of the total of such damages (subject to the Limits of Insurance) plus `allocated loss adjustment expense' for which coverage is provided by the policy and any endorsements thereto and which exceeds the deductible shown in Item 1 of the Schedule. For purposes of this paragraph all damages are deemed to have been paid or to be payable before `allocated loss adjustment expense' has been paid or is payable. Furthermore, for the purpose of this Paragraph 2, all amounts advanced or paid as or in lieu of damages shall first be applicable to the deductible amount in determining the sum of damages within the deductible amount.
"3. All other terms of the policy and any endorsements thereto, including those with respect to (a) our rights and duties with respect to the defense of suits and (b) your duties in the event of an `accident' apply irrespective of the application of the deductible amount.
"4. `Allocated Loss Adjustment Expense' shall include, but not [sic] limited to:
"1. Attorney's fees for claims in suit;
"2. Court costs and other items of expense such as:
"a. medical, expert and other witnesses at trials or hearings, stenographic costs and costs of copies of documents and transcripts, and
"b. medical, expert, or consultant fees and expenses relating to the defense of any claim or suit.
"5. We have the right but not the duty to advance any part or all of the deductible amount. If we exercise this right, you must promptly reimburse us for any such amounts advanced. All such amounts advanced shall remain your sole and exclusive liability. Exercise of our right to advance such amounts shall not create any obligations or be construed as giving rise to any course of dealing nor shall the exercise of our right to advance such amounts be construed as a waiver or estoppel of our rights under this policy."