DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from an order of the Wood County Court of Common Pleas granting summary judgment to an insurer in an uninsured/uninsured motorist ("UM/UIM") case. Because we conclude that the trial court properly found no coverage under the umbrella policy, we affirm.
 {¶ 2} In April 2000, appellants, Donald Kohntopp, Ann Kohntopp, Rachel Kohntopp, and Benjamin Kohntopp were injured in a motor vehicle accident while traveling in their own minivan. The accident was caused by the driver of another auto which struck the Kohntopps' vehicle. Donald Kohntopp's medical treatment costs exceeded $160,000; Ann's, Rachel's, and Benjamin's treatment exceeded $10,000. The Kohntopps received the liability policy limit of $50,000 from Allstate, the tortfeasor's insurer. The Kohntopps then brought an action for declaratory judgment seeking UM/UIM motorist coverage from a personal automobile policy and a separate personal umbrella policy, both issued by appellee, Hamilton Mutual Insurance Company ("Hamilton"). Hamilton filed a motion for summary judgment on the issue of UM/UIM coverage.
 {¶ 3} Although the trial court ruled that the Kohntopps were covered by the UM/UIM coverage of their personal automobile policy, it denied coverage under the umbrella policy. The court determined that when they had applied for the umbrella policy, Donald and Ann had executed a valid waiver of UM/UIM coverage.
 {¶ 4} The Kohntopps now appeal that judgment, arguing the following sole assignment of error:
 {¶ 5} "The trial court erred as a matter of law when it held that the Kohntopps effectively waived uninsured/underinsured motorist coverage under the umbrella liability policy issued by appellee, Hamilton Mutual Insurance Company."
 {¶ 6} The standard of review of a ruling on summary judgment is the same for both a trial court and an appellate court. Lorain Natl. Bankv. Saratoga Apts. (1989), 61 Ohio App.3d 127, 129. Summary judgment will be granted if "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of facts, if any, * * * show that there is no genuine issue as to any material fact" and, construing the evidence most strongly in favor of the non-moving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C).
 {¶ 7} R.C. 3937.18, as amended by HB 261, effective as of September 3, 1997, permits insurance companies to limit uninsured motorist coverage and creates a rebuttable presumption that an offer of UM/UIM coverage was made by the insurer. A written rejection is binding and effective when executed. Before this amendment, to reject or reduce UM/UIM coverage, an insurer had to follow specific notice and disclosure requirements. See Gyori v. Johnston Coca-Cola Bottling Group (1996),76 Ohio St.3d 565 and Linko v. Indemn. Ins. Co. of N. Am. (2000),90 Ohio St.3d 445. Although the 1997 amendment purported to overrideLinko, the Supreme Court of Ohio specifically held that the Linko
requirements still apply to offers of UM/UIM coverage in policies written after the 1997 HB 261 amendment and before the 2001 SB 97 amendment. SeeKemper v. Michigan Millers Mut. Ins. Co., 98 Ohio St.3d 162,2002-Ohio-7101.
 {¶ 8} It is undisputed that the Kohntopps' policy was in effect during the HB 261 amendment period. Thus, the Linko requirements apply to determine whether the insurance policy includes a meaningful offer and valid rejection of UM/UIM coverage. The Linko court set forth the following specific elements which the offer must contain: (1) information that UM/UIM coverage is available; (2) a brief description of the coverage; (3) the premium for that coverage; and (4) an express statement of the UM/UIM coverage limits. Id. at 447-448.
 {¶ 9} The second page of the Hamilton umbrella policy application contains, in pertinent part, the following language;
 {¶ 10} "Excess Uninsured Motorist Coverage-Ohio Only (Not available in Indiana, Kentucky, or Michigan). You have the option of accepting or rejecting Uninsured Motorist Coverage under your personal umbrella policy. Uninsured Motorist Coverage insures you, your heirs or legal representatives for damages up to the limit selected which you are legally entitled to recover from the owner or operator of an uninsured motor vehicle.
 {¶ 11} "If you accept coverage under your personal umbrella policy, you must have primary Uninsured Motorist Coverage provided in your primary auto and/or motorcycle policy for limits equal to the primary auto liability limit required for personal umbrella coverage on each vehicle including those acquired during the policy term.
 {¶ 12} "In some states Uninsured Motorist Coverage applies to property damage as well as bodily injury. Your agent can advise as to the law in your state. If Uninsured Motorist Coverage applies to body and property damage, your primary Uninsured Motorist Coverage must apply to both coverages at the auto limit required under the personal umbrella policy.
 {¶ 13} "Uninsured motorist coverage includes Underinsured Motorist Coverage if defined separately in your primary auto policy.
 {¶ 14} "The premium for this coverage under the personal umbrella is shown on the front of this application under 2.d.
 {¶ 15} "This description does not alter the terms of the coverage provided under the endorsement.
 {¶ 16} "I o accept x reject Uninsured Motorist Coverage under the Personal Umbrella Policy."
 {¶ 17} The signatures of Donald and Ann Kohntopp immediately follow. The policy language satisfies the first and second requirements of Linko, that being information that UM/UIM coverage is available as well as a brief description of coverage.
 {¶ 18} Next, on the first page of the Kohntopps' application is a section labeled "ANNUAL PREMIUM COMPUTATION." In the section pertaining to motor vehicles, two specific choices for policy limits are listed in two column headings on the right side of the page. At the left side of the page, Section 2.d. (as referenced on the second page) reads as follows: "Excess Uninsured Motorist/Underinsured Motorist coverage-OH only." Following this line across to the two columns at the right, are listed premiums for initial vehicles of $30 and $25 for each of the two possible policy limit choices. Additional vehicles are $20 and $15 respectively. The total base premium for the umbrella policy UM/UIM coverage may be easily calculated from this information, depending on the number of cars covered and the policy limit selected.
 {¶ 19} In addition to this premium, however, the last item at the bottom of the column states "Territory Multiplier (if applicable). See Agent's Manual (Use 1.35 factor if applicable)." This is a territory cost factor which would apply to the total for all premium coverages depending upon where the applicant resides. In other words, if the applicant lives in an area that requires the application of the territory multiplier, the total premium (including the base UM/UIM premiums) for all coverages is multiplied by 1.35. If the territory premium is not required, then no extra calculation is necessary. While we agree that this may require an extra calculation, the two alternatives for the UM/UIM premium (with or without the territory multiplier) may be determined solely from the information on the form. Contrary to the Kohntopps' contentions that the entire form must be filled in and specifically calculated out, we interpret Linko as requiring only that the premiums be reasonably calculable from the application. In our view, the application includes sufficient premium cost information to meet the second Linko
requirement.
 {¶ 20} As to the third requirement of an express statement of UM/UIM coverage limits, one must look to both pages of the application. Near the bottom of the list of items on the first page, the application contains three choices for the underlying umbrella policy limits: $1,000,000, $2,000,000, or $3,000,000. As noted on the second page, UM/UIM coverage insures for damages up to the limit selected by the applicant from these three choices. In other words, UM/UIM coverage will match the coverage available for the umbrella liability policy. Although this form does not indicate which limit the Kohntopps selected as the underlying policy amount, their complaint indicates that the policy was for $1,000,000. Therefore, the amount of the basic umbrella policy coverage is not in dispute. The application itself provides an express statement of the available limits of the UM/UIM coverage, that coverage depends upon the applicant's choice. Here, the Kohntopps rejected the offer of UM/UIM coverage.
 {¶ 21} After reviewing the entire document, we conclude that the Hamilton umbrella policy application includes information that UM/UIM coverage is available, a brief description of the coverage, the premium for that coverage, and an express statement of the UM/UIM coverage limits. As the trial court determined, the policy meets the Linko
requirements; the rejection and waiver of UM/UIM coverage is presumed valid under R.C. 3937.18. The Kohntopps offered nothing to rebut this presumption. Therefore, the trial court properly granted summary judgment in favor of Hamilton, since no material facts remain in dispute and Hamilton is entitled to judgment as a matter of law.
 {¶ 22} Accordingly, the Kohntopps' sole assignment of error is not well-taken and the judgment of the Wood County Court of Common Pleas is affirmed. Court costs of this appeal are assessed to appellants.
 JUDGMENT AFFIRMED.
Handwork, P.J., concurs.