OPINION
{¶ 1} Defendant-appellant Richard Hohman ("Hohman"), in his individual capacity and as the administrator of the Estate of Vivian Hohman ("Vivian"), brings this appeal from the judgment of the Court of Common Pleas of Shelby County granting summary judgment to plaintiff-appellee Motorists Mutual Ins. Co. ("Motorists").
 {¶ 2} On January 18, 2001, Homan signed an application for umbrella automobile insurance coverage with Motorists. The effective dates of the policy were from February 1, 2001, until February 1, 2002. The policy had a liability limit of $1,000,000. On June 16, 2001, Vivian was struck by a vehicle while crossing a road in Puerto Rico and died. Hohman attempted to seek recovery under the uninsured motorists clause of the umbrella policy and Motorists denied the claim.
 {¶ 3} On June 9, 2003, Motorists filed a complaint for declaratory relief in Montgomery County, Ohio. Hohman requested and received a change of venue to Shelby County. On September 17, 2003, Hohman filed a motion for summary judgment. Motorists filed a motion for summary judgment on October 29, 2003. The trial court denied Hohman's motion and granted Motorists' motion on January 7, 2004. Hohman brings this appeal from that judgment and raises the following assignment of error.
The trial court erred in finding that oral and documentaryextrinsic evidence is admissible to prove an insurer made a validoffer and obtained a valid rejection of Uninsured/Underinsuredinsurance coverage.
 {¶ 4} The sole issue raised by Hohman in this appeal is whether Motorists can rely upon extrinsic evidence to show that the insurer made a valid offer and obtained a valid rejection of UM/UIM coverage under R.C. 3937.18. The statutory law in effect on the date of the new policy period is the law to be applied to claims arising during that period. In this case, the policy went into effect on February 1, 2001. Thus, the 2000 version of the statute is the applicable version.
A named insured or applicant may reject or accept bothcoverages as offered under division (A) of this section, or mayalternatively select both such coverages in accordance with aschedule of limits approved by the superintendent. The scheduleof limits approved by the superintendent may permit a namedinsured or applicant to select uninsured and underinsuredmotorists coverages with limits on such coverages that are lessthan the limit of liability coverage provided by the automobileliability or motor vehicle liability policy of insurance underwhich the coverages are provided, but the limits shall be no lessthan the limits set forth in [R.C. 4509.20] for bodily injury ordeath. A named insured's or applicant's rejection of bothcoverages as offered under division (A) of this section, or anamed insured's or applicant's selection of such coverages inaccordance with the schedule of limits approved by thesuperintendent, shall be in writing and shall be signed by thenamed insured or applicant. A named insured's or applicant'swritten, signed rejection of both coverages as offered underdivision (A) of this section, or a named insured's or applicant'swritten, signed selection of such coverages in accordance withthe schedule of limits approved by the superintendent, shall beeffective on the day signed, shall create a presumption of anoffer of coverages consistent with division (A) of this section,and shall be binding on all other named insureds, or applicants.
R.C. 3937.18. The Ohio Supreme Court has addressed what the writing must include in order for a valid rejection of UM/UIM insurance to occur under R.C. 3937.18 as in force during the relevant period. The Supreme Court held that an offer for UM/UIM must contain the following three elements: 1) a description of the coverage; 2) the premium costs for UM/UIM coverage; and 3) and express statement of the coverage limits. Linko v. IndemnityIns. Co. of N. Amer. (2000), 90 Ohio St.3d 445, 449,739 N.E.2d 338. The failure to include all of these elements prevents the applicant from making an express, knowing rejection of coverage. Id. The Supreme Court further held that "the four corners of the insurance agreement control in determining whether the waiver was knowingly and expressly made by each of the named insureds." Id. at 450. "Extrinsic evidence is not admissible to prove that a waiver was knowingly and expressly made by each of the named insureds." Id. This court has followed the guidance of the Supreme Court and required that an offer for UM/UIM coverage be in writing and contain all of the required elements set forth inLinko. Coldwell v. Allstate Ins. Co., 3rd Dist. No. 3-03-04, 2003-Ohio-5139. These requirements apply to all policies written after the 1997 statutory amendments and prior to the effective date of Senate Bill 97. Kemper v. Michigan MillersMut. Ins. Co., 98 Ohio St.3d 162, 2002-Ohio-7101.
 {¶ 5} In this case, the written application indicates that Hohman declined UM/UIM coverage. However, the application does not provide a description of the coverage, the potential limits of the coverage, or the cost of the coverage. No rejection form was specifically provided. Thus, Hohman was not able to make a knowing and express rejection of UM/UIM coverage by reviewing the four corners of the agreement.
 {¶ 6} Motorists claims that a written document did exist at one time but was destroyed once the coverage was rejected. In support of this claim, Motorists provides the affidavit of one of its employees. Motorists claims that the Supreme Court inKemper specifically allowed the use of extrinsic evidence to prove an effective offer.[1] However, a reading ofKemper shows that it merely answered questions certified to it by the United States District Court for the Northern District of Ohio, Western Division. Specifically, the Kemper opinion states the following.
"(1) Are the requirements of Linko * * * relative to anoffer of UM/UIM coverage, applicable to a policy of insurancewritten after enactment of [1997] HB 261 and before [2001] SB97?
 "(2) If the Linko requirements are applicable, does, under[1997] HB 261, a signed rejection act as an effective declinationof UM/UIM coverage, where there is no other evidence, oral ordocumentary, of an offer of coverage?"
 We answer certified question No. 1 in the affirmative andcertified question No. 2 in the negative.
Id. The opinion does not state that extrinsic evidence may be reviewed, just that a signed rejection alone is insufficient to satisfy the Linko requirements.
 {¶ 7} Here, the sole evidence that any written offer satisfying the Linko requirements existed is the affidavit of the employee of Motorists. This court has held that the rejection must be found within the four corners of the insurance agreement. Coldwell, supra. Any extrinsic evidence would, by definition, not be within the four corners of the agreement. Thus, it may not be used to determine if the requirements of Linko have been met. The assignment of error is sustained.
 {¶ 8} The judgment of the Court of Common Pleas of Shelby County is reversed and the cause is remanded for further proceedings.
Judgment reversed and cause remanded.
 Shaw, P.J., and Cupp, J., Concur.
[1] Motorists also claim that this court permitted the use of extrinsic evidence in Strayer v. Lincoln General Ins. Co.,
3rd Dist. No. 1-02-100, 2003-Ohio-3429. However, no question concerning extrinsic evidence was raised in Strayer. The sentence referenced is a quote of the Kemper opinion only.