OPINION
{¶ 1} The plaintiff-appellant, Bruce A. Augenstein ("Augenstein") appeals the March 24, 2006 Judgment of the Court of Common Pleas of Marion County, Ohio granting summary judgment for defendant-appellee, Diamond State Insurance Company ("Diamond").
 {¶ 2} On August 17, 2000, Augenstein was operating a 1991 Peterbilt tractor trailer owned by Golden Hawk Transportation Company. Augenstein was hauling a flatbed trailer loaded with steel pile, in the course and scope of his employment with Golden Hawk Transportation, westbound on U.S. Route 30 in Crawford County, Ohio. Amanda M. Dolin ("Dolin") was traveling east in her father's 1993 Ford Taurus on U.S. Route 30 in Crawford County, Ohio when she attempted to pass eastbound traffic. When she attempted to re-enter the eastbound lane of traffic she lost control of her vehicle and began sliding sideways across the center line directly into the path of the tractor trailer operated by Augenstein. Dolin's vehicle was struck broadside resulting in Dolin's death and the death of her infant son who was a passenger in the rear seat of the vehicle. As a result of the accident, Augenstein suffered bodily injuries and severe psychological and emotional injuries.
 {¶ 3} On August 14, 2002, Augenstein commenced this action seeking damages for personal injuries he sustained in the accident. On September 12, 2002, Diamond State Insurance Company, Golden Hawk Transportation Company, Golden Hawk Inc., Golden Hawk Transportation Company Inc., Raymond T. Miller Inc., United National Group and United National Insurance Company ("Defendants") filed their answer to Augenstein's complaint. On October 2, 2002, James Dolin and Kelly Dolin filed their answers and the Estate of Amanda M. Dolin filed its answer and a counterclaim. Thereafter, Augenstein filed his reply to the counterclaim.
 {¶ 4} On July 8, 2005, the Estate of Amanda M. Dolin voluntarily dismissed its counterclaim against Augenstein. On August 22, 2005, James Dolin filed a motion for summary judgment. Augenstein filed his memorandum contra on September 16, 2005. On October 13, 2005, the trial court granted James Dolin's motion for summary judgment. On December 28, 2005, Defendants filed a motion for summary judgment. On January 27, 2006, Augenstein filed his memorandum contra to the motion for summary judgment and on February 6, 2006, Augenstein filed his own motion for summary judgment. Between February 6, 2006 and February 24, 2006, various motions and memoranda were filed in support of and in response to the motions for summary judgment. On March 1, 2006, the trial court denied Defendant's motion to strike. On March 10, 2006, Defendants filed their memorandum in response to the supporting memorandum filed by the Estate of Amanda M. Dolin.
 {¶ 5} On March 24, 2006, the trial court denied Augenstein's motion for summary judgment and granted Defendant's motion for summary judgment. Specifically, the trial court found that the policy of insurance issued by Diamond State Insurance Company contained a valid offer of uninsured/underinsured (UI/UIM) motorist coverage and an express rejection by Golden Hawk Transportation. The trial court further granted summary judgment on behalf of the remaining Defendants: Golden Hawk Transportation Company, Golden Hawk Inc., Golden Hawk Transportation Company Inc., Raymond T. Miller Inc., United National Group and United National Insurance Company, finding that they were not the insurers for Golden Hawk Transportation Company. On April 19, 2006, the trial court entered a Nunc Pro Tunc Judgment Entry regarding the March 24, 2006 finding that it was a final appealable order. On April 19, 2006, Augenstein filed a notice of voluntary dismissal of his claims against the Estate of Amanda M. Dilon.
 {¶ 6} On April 21, 2006, Augenstein filed a notice of appeal raising his sole assignment of error:
THE TRIAL COURT ERRED IN GRANTING DEFENDANT-APPELLEE, DIAMONDSTATE INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT AND DENYINGAPPELLANT'S MOTION FOR SUMMARY JUDGMENT BY FINDING THAT THEINSURED HAD EXPRESSLY REJECTED UNINSURED/UNDERINSURED MOTORISTCOVERAGE AND THAT SUCH COVERAGE WAS NOT AVAILABLE TO THEPLAINTIFF-APPELLANT PURSUANT TO Hollon v. Clary,104 Ohio St. 3d 526, 2004-Ohio-6772.
 Summary Judgment Standard {¶ 7} An appellate court reviews a trial court's decision on a motion for summary judgment de novo. Lorain Natl. Bank v.Saratoga Apts. (1989), 61 Ohio App.3d 127, 129. Summary judgment is properly granted when (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to only one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. Civ.R.56(C). Summary judgment is not proper unless reasonable minds can come to but one conclusion and that conclusion is adverse to the non-moving party. Id. Summary judgment should be granted with caution, with a court construing all evidence and deciding any doubt in favor of the non-moving party. Murphy v.Reynoldsburg (1992), 65 Ohio St.3d 356, 360.
 {¶ 8} The party moving for summary judgment bears the initial burden of identifying and providing the basis for its motion in order to allow the opposing party a "meaningful opportunity to respond." Mitseff v. Wheeler (1988), 38 Ohio St.3d 112, 116. In addition, the moving party also bears the burden of demonstrating the absence of a genuine issue of material fact as to an essential element of the case. Dresher v. Burt (1996),75 Ohio St.3d 280, 293. Once the moving party establishes that he is entitled to summary judgment, the burden shifts to the non-moving party to produce evidence and set forth specific facts showing that there is still a genuine issue of fact for the trial. Civ.R.56(E).
 {¶ 9} Coverage under the Insurance Policy
 {¶ 10} At the time of the accident, Augenstein was employed by Golden Hawk Transportation Company. Golden Hawk Transportation Company was owned by Raymond Miller ("Miller"), whom had purchased the company in 1991. Miller had previously owned another trucking company, Aluminum Express, which he had operated from 1980 until his purchase of Golden Hawk Transportation Company. Golden Hawk Transportation Company was insured under a commercial vehicle liability policy issued by Diamond State Insurance Company, with limits of liability of one million dollars ($1,000,000.00).
 {¶ 11} On October 24, 2005, Augenstein deposed Miller and Michael Landino ("Landino"), an insurance broker who submitted an offer of insurance to Golden Hawk Insurance Transportation Company on behalf of Diamond State Insurance Company. Landino testified that he made a proposal to Miller, on behalf of Golden Hawk Transportation Company, for its insurance coverage for the policy period beginning March 1, 2000. He stated that he presented a written proposal to Miller for the insurance coverage providing the options for uninsured/underinsured motorists coverage. The options set forth the limitations of the coverage as well as the premium amount for each coverage. Specifically, the proposal offered uninsured/underinsured motorist coverage in the amounts of $25,000.00 at a cost of $660.00 or $500,000.00 at a cost of $5,750.00. However, an offer of uninsured/underinsured motorist coverage in an amount equal to the limits of the liability, i.e. one million dollars ($1,000,000.00) and a quote for the cost of the same was never extended to Golden Hawk Transportation Company.
 {¶ 12} Miller testified that he read and understood the insurance proposals made by Landino and based upon his reading and understanding of the proposals he executed the rejection form for uninsured/underinsured motorist coverage. Specifically, he testified that he was familiar with uninsured/underinsured motorist coverage, its added expense to the company and how he had decided not to purchase it in the twenty years that he had been in the trucking company business because "We have never had it. It was an added expense we didn't need." Furthermore, he testified that he signed a rejection form each year with respect to uninsured/underinsured motorist coverage.
 Statutory and Case Law {¶ 13} Pursuant to R.C. 3937.18(A), S.B. 57 version (effective Nov. 2, 1999 — Sept. 21, 2000),
No automobile liability or motor vehicle liability policy ofinsurance insuring against loss resulting from liability imposedby law for bodily injury or death suffered by any person arisingout of the ownership, maintenance, or use of a motor vehicleshall be delivered or issued for delivery in this state withrespect to any motor vehicle registered or principally garaged inthis state unless both of the following coverages are offered topersons insured under the policy for loss due to bodily injury ordeath suffered by such insureds:
* * *
(2) Underinsured motorist coverage, which shall be in anamount of coverage equivalent to the automobile liability ormotor vehicle liability coverage and shall provide protectionfor insureds thereunder against loss for bodily injury, sickness,or disease, including death, suffered by any person insured underthe policy, * * *. (Emphasis added.)
 {¶ 14} The Supreme Court of Ohio in Linko v. Indemnity Ins.Co. of N. Am., (2000), 90 Ohio St.3d 445, addressed what constitutes a valid offer of uninsured/underinsured motorist coverage and what constitutes an express and knowing rejection of the same under R.C. 3937.18(C). The Linko decision required the offer for uninsured/underinsured motorist coverage be in writing and include a brief description of coverage, a stated premium for that coverage, and an express statement of the uninsured/underinsured motorist coverage limits. However, while acknowledging that Linko retains some of its relevance in determining whether a valid rejection has taken place, Linko
interpreted a different statute than the one at issue in this case.
 {¶ 15} In Hollon v. Clary (2004), 104 Ohio St.3d 526, the Supreme Court of Ohio drastically changed which evidence can be considered by a court in determining whether a valid rejection of uninsured/underinsured motorist coverage had occurred. Specifically, evidence of the offer no longer had to be included in the rejection form; rather, evidence of the offer of uninsured/underinsured motorist coverage could be shown with extrinsic evidence.
 {¶ 16} Furthermore, the Hollen case defined what constituted a "meaningful offer" as follows:
The Linko requirements are a means to an end. They werechosen to ensure that insurers make meaningful offers. A"meaningful offer" is "an offer that is an offer in substance andnot just in name" that "allow[s] an insured to make an express,knowing rejection of [UM/UIM] coverage." (Citations omitted.)Though Twin City's written offer, per se, did not satisfy allthe Linko requirements, we will not elevate form over substanceor ignore the expressed intent of the parties to a contract.(Emphasis added.)
 Hollon, at 529. In Hollon, Twin City's offer did not state the applicable premiums, but the offer did describe the coverage and expressly stated the coverage limits. Hollon, at 527. However, the employer's co-owner stated that before signing the rejection forms of UM/UIM coverage, he was aware of the applicable premiums and understood he was rejecting UM/UIM coverage in its entirety. Id.
 {¶ 17} In this case, Augenstein alleges that the trial court erred by finding that Miller had expressly rejected uninsured/underinsured motorist coverage and that such coverage was not available to Augenstein pursuant to Hollon.
Specifically, he argues that Miller could not have rejected the coverage since there was no proposal for uninsured/underinsured coverage at the one million dollar ($1,000,000.00) level.
 {¶ 18} Upon a review of the rejection and the proposal for uninsured/underinsured motorist coverage, it is apparent that there is no dispute that a written proposal was made and presented to Golden Hawk Transportation concerning uninsured/underinsured motorist coverage and that a rejection was executed by Raymond Miller on the uninsured/underinsured motorist coverage. In addition, there is no dispute that uninsured/underinsured motorist coverage was offered in the amounts of $25,000.00 at a cost of $660.00 or $500,000.00 at a cost of $5,750.00. Furthermore, it is clear that the written proposal and the rejection form were two separate documents.
 {¶ 19} Nevertheless, the deposition testimony of Raymond Miller demonstrates that Miller had read and understood the insurance proposals made by Landino and based upon his reading and understanding of the proposals he executed the rejection form for uninsured/underinsured motorist coverage. Specifically, he testified that he was familiar with uninsured/underinsured motorist coverage, its added expense to the company and how he had decided not to purchase it in the twenty years that he had been in the trucking company business because "We have never had it. It was an added expense we didn't need." Furthermore, he testified that he signed a rejection form each year with respect to uninsured/underinsured motorist coverage. Therefore, it would be reasonable to infer that if a corporate entity rejects uninsured/underinsured motorist coverage in the amount of $25,000.00 and $500,000.00 because "[i]t was an added expense we didn't need," a more expensive uninsured/underinsured motorist coverage in the amount of one million dollars ($1,000,000.00) would also be rejected.
 {¶ 20} Upon a review of the record and the intent of the parties in this contract, it is clear that there was an express rejection of the uninsured/underinsured motorist coverage by Miller on behalf of Golden Hawk Transportation. Specifically, Miller testified:
Q: Let me ask you, Mr. Miller, going back to DepositionExhibit Number 1 (rejection form), when you signed that, did youunderstand what you were signing?
 A: Yes, sir.
 Q: Did you understand the cost of — what it was going to costyou —
 A: Yes, sir.
 Q: — to have uninsured motorist coverage and underinsuredmotorist coverage?
 A: Yes.
 Q: How did you understand what that cost was?
 A: By the proposal.
Miller Depo. p. 29-30.
 {¶ 21} Accordingly, Augenstein's sole assignment of error is overruled and the March 24, 2006 Judgment of the Court of Common Pleas of Marion County, Ohio granting summary judgment for defendant-appellee, Diamond State Insurance is affirmed.
Judgment affirmed.
 Bryant, P.J., and Cupp, J., concur.