OPINION
{¶ 1} Appellant American Manufacturers Mutual Insurance Company ("AMM") filed a declaratory judgment action in the Mahoning County Court of Common Pleas relating to underinsured motorist ("UIM") coverage. The trial court granted summary judgment to Appellee Jerry Kurtz. For the following reasons, the judgment of the trial court is reversed and judgment is entered in favor of Appellant.
 {¶ 2} On November 8, 2001, Appellee was injured while he was doing maintenance work underneath a commercial vehicle owned by Sandra Baylor. The vehicle was formerly owned by his employer, Schwebel Baking Co. and Appellee was servicing it pursuant to his employment with Schwebel. While Appellee was physically underneath the vehicle working on it, another person (the tortfeasor) attempted to start the vehicle. The vehicle moved and ultimately fell on top of Appellee, causing serious injuries.
 {¶ 3} Appellee entered into a release with the tortfeasor for $50,000, and also received $50,000 from his own auto insurance policy. These amounts failed to fully compensate Appellee for his injuries. Appellee attempted to obtain UIM coverage from a business auto policy ("BAP") owned by Schwebel, designated as policy F3Y004473-01. The BAP was effective from February 2, 2001, to February 1, 2002. The BAP contained an uninsured/underinsured motorist ("UM/UIM") endorsement.
 {¶ 4} On December 6, 2002, AMM filed a declaratory judgment action, seeking a determination that Appellee was not entitled to UIM benefits under the BAP.
 {¶ 5} On January 10, 2003, Appellee filed an answer, and raised a counterclaim for UIM benefits under unspecified insurance policies issued by AMM. No policies were attached to the counterclaim.
 {¶ 6} On January 22, 2003, AMM filed an answer to Appellee's counterclaim, and noted that it had provided two policies to Schwebel Baking Company: the aforementioned BAP; and a commercial general liability policy ("CGL").
 {¶ 7} On November 4, 2003, AMM filed a motion for summary judgment. AMM requested summary judgment on all coverage issues under both the BAP and CGL. Included as part of the motion was an affidavit by Paul Schwebel, Vice President of Schwebel Baking Company. Mr. Schwebel stated that the BAP covered a specific list of vehicles, referring to a list that was attached to AMM's motion for summary judgment. He stated that the vehicle that caused Appellee's injuries was not included on the list of vehicles covered by the BAP and that the vehicle was not owned by Schwebel Baking Company. He also stated that he signed a UM/UIM selection/rejection form, in which he agreed to reduce UM/UIM coverage to $25,000 for commercial vehicles. He noted that prior to signing the selection/rejection form, he was informed of the premiums for each level of UM/UIM coverage.
 {¶ 8} On December 1, 2003, Appellee filed a response to AMM's motion for summary judgment.
 {¶ 9} On January 7, 2004, Appellee filed his own motion for summary judgment. Attached to the motion was an affidavit of Appellee in which he asserted that he was acting in the course and scope of employment at the time of the accident.
 {¶ 10} Both parties filed additional supplements and replies to the two pending motions for summary judgment.
 {¶ 11} On February 18, 2004, the trial court issued its ruling. It denied AMM's motion for summary judgment and granted Appellee's motion. The trial court held that Schwebel did not execute a valid reduction of UM/UIM coverage, under the holding of Linko v. Indemn. Ins. Co. of N. Am. (2000),90 Ohio St.3d 445, 2000-Ohio-92, 739 N.E.2d 338; and that UM/UIM coverage arose out of operation of law in the same amount as the liability coverage of the BAP.
 {¶ 12} This timely appeal followed. The parties have agreed that the only issue under review in this appeal is coverage relating to the BAP, and not coverage relating to the CGL.
 STANDARD OF REVIEW {¶ 13} This case involves review of a judgment entry granting summary judgment in a declaratory judgment action. Appellate review of summary judgment is de novo. Grafton v. Ohio EdisonCo. (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. In accordance with Civ.R. 56, summary judgment is appropriate:
 {¶ 14} "[W]hen (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. Horton v. Harwick Chem. Corp. (1995),73 Ohio St.3d 679, 653 N.E.2d 1196, paragraph three of the syllabus. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Dresher v. Burt
(1996), 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264, 273-274."Zivich v. Mentor Soccer Club (1998), 82 Ohio St.3d 367,369-370, 696 N.E.2d 201.
 {¶ 15} If the moving party satisfies its initial burden of proof, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall (1997), 77 Ohio St.3d 421, 429,674 N.E.2d 1164, citing Dresher, supra, 75 Ohio St.3d 280,662 N.E.2d 264.
 ASSIGNMENT OF ERROR NO. 1 {¶ 16} "The Trial Court Erred By Not Granting Summary Judgment in Favor Of Plaintiff-Appellant AMM Because Defendant-Appellee Kurtz Is Not `Insured' Under The Business Auto Policy."
 {¶ 17} AMM argues that the vehicle causing Appellee's injuries was not a covered vehicle under the BAP, and was not even a vehicle that AMM's insured owned. AMM contends that as part of the definition of "who is insured" under the BAP, the person or persons identified as "you" must be "occupying" a covered "auto" as those terms are defined in the BAP. AMM concludes that Appellee was not insured under the UM/UIM sections of the BAP because there is no applicable covered auto involved in the incident in order to trigger UIM coverage.
 {¶ 18} Appellee has stated in the record that he was not occupying a covered auto and was not an insured under the actual terms of the UIM endorsement of the BAP. (Defendant's M.S.J., p. 11.) Appellee submits that he is entitled to UIM coverage under the principles set forth in Scott-Pontzer v. Liberty Mut. FireIns. Co. (1999), 85 Ohio St.3d 660, 710 N.E.2d 1116, rather than under the terms of the UIM endorsement. Appellee acknowledges that Scott-Pontzer was partially overruled and limited by the holding in Westfield Ins. Co. v. Galatis, 100 Ohio St.3d 216,2003-Ohio-5849, 797 N.E.2d 1256. Galatis held that, "[a]bsent specific language to the contrary, a policy of insurance that names a corporation as an insured for uninsured or underinsured motorist coverage covers a loss sustained by an employee of the corporation only if the loss occurs within the course and scope of employment. Galatis, supra, ¶ 2 of the syllabus, citations omitted. Appellee contends that, in this matter, UIM coverage is not barred by the holding of Galatis, supra, because the accident occurred during the course and scope of his employment with Schwebel.
 {¶ 19} Coverage under Scott-Pontzer is premised on the mandatory provisions of former R.C. § 3937.18. The parties agree the relevant version of the statute is that contained in S.B. No. 267, effective September 21, 2000, which states:
 {¶ 20} "(A) No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless both of the following coverages are offered to persons insured under the policy due to bodily injury or death suffered by such insureds:
 {¶ 21} "* * *
 {¶ 22} "(2) Underinsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection for insureds thereunder for bodily injury, sickness, or disease, including death, suffered by any person insured under the policy, where the limits of coverage available for payment to the insured under all bodily injury liability bonds and insurance policies covering persons liable to the insured are less than the limits for the insured's uninsured motorist coverage. Underinsured motorist coverage is not and shall not be excess insurance to other applicable liability coverages, and shall be provided only to afford the insured an amount of protection not greater than that which would be available under the insured's uninsured motorist coverage if the person or persons liable were uninsured at the time of the accident. The policy limits of the underinsured motorist coverage shall be reduced by those amounts available for payment under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured."
 {¶ 23} AMM has previously admitted that the accident occurred in the course and scope of Appellee's employment with its insured, Schwebel Baking Co. (11/4/03 M.S.J., p. 3.) Clearly, the hurdle presented by Galatis when an employee attempts to applyScott-Pontzer to obtain UIM benefits on his employer's auto policy does not exist, here. Unfortunately, for Appellee, however, this is immaterial to his coverage under this policy. The Galatis holding did not create new opportunities for UIM coverage as a matter of law. The sole effect of Galatis is to act as a limitation on the application of Scott-Pontzer to uninsured motorist cases.
 {¶ 24} AMM contends that, despite the fact that Appellee was acting in the course and scope of employment, he cannot qualify as an insured under the BAP. Even Scott-Pontzer acknowledged that, "[i]f we find Pontzer was not an insured under the policies, then our inquiry is at an end." Scott-Pontzer at 662. Nothing in R.C. § 3937.18 prohibits parties from establishing a definition as to who is and who is not an "insured" under an insurance policy. Holliman v. Allstate Ins. Co. (1999),86 Ohio St.3d 414, 416-417, 715 N.E.2d 532.
 {¶ 25} AMM contends that Appellee was not an insured under the UM/UIM provisions of the BAP because the definition of "insured" is more specific and narrower than that found inScott-Pontzer. In Scott-Pontzer, the Supreme Court determined that the policy language was ambiguous when the insured was defined by the single word "you," and when the named insured was a corporate entity. Scott-Pontzer reasoned that UM/UIM coverage, as required by former R.C. § 3937.18, was meant to protect actual people, not corporations, and that the word "you" must necessarily refer to employees of the corporation, in the context of UM/UIM coverage.
 {¶ 26} AMM points out that the UIM section of the BAP contains a narrower definition of "insured" than the definition under review in Scott-Pontzer, and that this definition includes the requirement that the incident must involve a covered auto:
 {¶ 27} "B. WHO IS AN INSURED
 {¶ 28} "If the Named Insured is designated in the Declarations as:
 {¶ 29} "1. An individual, then the following are `insureds';
 {¶ 30} "a. The Named Insured and any `family members.'
 {¶ 31} "b. Anyone else `occupying' a covered `auto' or a temporary substitute * * *.
 {¶ 32} "* * *
 {¶ 33} "2. A partnership, limited liability company,corporation or any other form of organization, then thefollowing are `insureds':
 {¶ 34} "a. Anyone `occupying' a covered `auto' or atemporary substitute * * *.
 {¶ 35} "b. Anyone for damages he or she is entitled to recover because of `bodily injury' sustained by another `insured.'" (Emphasis added.)
 {¶ 36} AMM notes that it has no dispute with the fact that Appellee is an employee of the insured, acting in the scope of employment at the time (and hence covered by the Worker's Compensation system), or that Appellee may have been "occupying" the vehicle at the time. AMM's dispute centers around the fact that, pursuant to the policy, this incident did not involve a covered "auto."
 {¶ 37} Appellee's argument is premised on the assumption that the named insured is a corporation, and as such, Section B(2) of the policy definitions quoted above would apply. Appellee is correct, insofar as this portion of his argument is concerned. Our review of the policy does not end here, however. Section B(2) defines an insured as anyone occupying a covered auto. A covered "auto" is defined in the BAP, for purposes of UM/UIM coverage, by coverage symbol 02. (Declarations page 1.) Coverage symbol 02 is defined elsewhere in the BAP as "2 = OWNED `AUTOS' ONLY." (Business Auto Coverage Form, p. 1.) It is undisputed that neither Schwebel Baking Company, nor any other possible insured under the BAP, owned the vehicle that caused Appellee's injuries. Therefore, Appellant appears to be correct in maintaining that Appellee cannot be covered under the UIM provision of the BAP.
 {¶ 38} AMM also argues that, under the S.B. 267 version of R.C. § 3937.18(J)(1), an insurer may validly restrict the definition of "who is an insured" and may restrict UIM coverage to situations involving only those vehicles specifically covered by the policy. The applicable version of R.C. § 3937.18(J)(1) reads as follows:
 {¶ 39} "(J) The coverages offered under division (A) of this section or selected in accordance with division (C) of this section may include terms and conditions that preclude coverage for bodily injury or death suffered by an insured under any of the following circumstances:
 {¶ 40} "(1) While the insured is operating or occupying a motor vehicle owned by, furnished to, or available for the regular use of a named insured, a spouse, or a resident relative of a named insured, if the motor vehicle is not specifically identified in the policy under which a claim is made, or is not a newly acquired or replacement motor vehicle covered under the terms of the policy under which the uninsured and underinsured motorist coverages are provided;"
 {¶ 41} The precise language of R.C. § 3937.18(J)(1) quoted here was inserted in 1997 through Am.Sub.H.B. No. 261, effective September 3, 1997, and continued in the S.B. 267 version of the statute applicable to this appeal.
 {¶ 42} The record contains Paul Schwebel's affidavit that Schwebel Baking Company did not own the vehicle that caused Appellee's injuries. The record also contains a specific list of vehicles covered by the BAP, and there is no indication that the vehicle that caused Appellee's injuries is on this list. Appellant once again concludes, and we must agree, that this evidence demonstrates that Appellee could not be covered because the vehicle involved in the accident was not covered under the plain language of the policy.
 {¶ 43} AMM has provided an impressive list of cases that unanimously agree that a corporate auto insurance policy will avoid the Scott-Pontzer ambiguity by limiting the definition of "insured" to "anyone occupying a covered auto," or similar language. Those cases, and a few others not mentioned by AMM, are summarized as follows:
 {¶ 44} In Standish v. Ohio Cas. Ins. Co., 1st Dist. No. C-030041, 2003-Ohio-4309, the Standish court concluded that R.C. § 3937.18(J)(1) necessarily allows a corporation to exclude from UIM coverage those automobiles that it does not own. The employee was attempting to obtain Scott-Pontzer coverage when she was struck by a vehicle while she was walking to work, however, the vehicle was not owned by her employer. Standish
held at ¶ 15-16:
 {¶ 45} "In the case at bar, the BA policy differed from the policy held to be ambiguous in Scott-Pontzer. Here, instead of using the word `you' in defining an insured, the policy defined an insured as `[a]nyone occupying a covered "auto" * * *.' A `covered auto' was then defined as `OWNED "AUTOS" ONLY. Only those "autos" you own * * *.' The Business Auto Coverage Form then stated that `the words "you" and "your" refer to the Named Insured shown in the Declarations,' which was Chicago MSO.
 {¶ 46} "Courts have uniformly held that policy language substantially similar to the language in the instant case removes the ambiguity found in Scott Pontzer. Where the policy language specifically restricts coverage to persons occupying covered vehicles and where the policy specifically identifies the named insured (and therefore the owner of the covered vehicles) as a corporate entity, the ambiguity found in Scott-Pontzer is eliminated. We find these decisions to be well reasoned and in accordance with the general rule that a court should give effect to the plain language of the policy." (Footnotes omitted.)
 {¶ 47} Similarly, in Alexander v. Seward, 4th Dist. No. 02CA2658, 2002-Ohio-6348, an employee attempted to obtainScott-Pontzer coverage for an accident in which she was driving her husband's car, even though that car was not covered by the employer's auto policy. The court held at ¶ 20-21:
 {¶ 48} "The UM endorsement in Camoplast's policy identifies `who is an insured' under the policy, when the named insured is a corporation, as `[a]nyone occupying a covered "auto" or a temporary substitute for a covered "auto".'" Because the auto in question was not covered by the explicit language of the policy, the employee was denied on appeal: "We find that this language is unambiguous. Unlike the policy at issue in Scott-Pontzer, where the definition of `who is an insured' was ambiguous, in this case the policy clearly identifies an insured as an individual occupying a covered auto. * * *" (Footnote omitted.)
 {¶ 49} The court in Selective Ins. Co. v. Wilson, 5th Dist. No. CT2002-0009, 2002-Ohio-7388, held that an employee was not entitled to Scott-Pontzer coverage when the employee was injured as a pedestrian and where the policy contained the following definitions of insured:
 {¶ 50} "1. If the Named Insured is designated in the Declarations as:
 {¶ 51} "a. An individual, then the following are `insureds':
 {¶ 52} "(1) The Named Insured and any `family member'.
 {¶ 53} "(2) Anyone else `occupying' a covered `auto' or a temporary substitute for a covered `auto'. * * *
 {¶ 54} "b. A partnership, limited liability company, corporation or any other form of organization, then the following are `insureds':
 {¶ 55} "(1) Anyone `occupying' a covered `auto' or a temporary substitute for a covered `auto'. * * *
 {¶ 56} "(2) Anyone for damages he or she is entitled to recover because of `bodily injury' sustained by another `insured.'" Id. at ¶ 14-20.
 {¶ 57} We note that the policy language in Wilson appears identical to the language in the BAP under review in the instant appeal.
 {¶ 58} Lumbermans Mut. Casualty Co. v. Phoui Xayphonh, 9th Dist. No. 21217, 2003-Ohio-1482, also contains the same definition of an insured as in the instant case, and was upheld as valid limitation on the definition of insured.
 {¶ 59} There are additional cases which reach the same result, and contain identical or nearly identical policy language as the BAP in the instant case:
 {¶ 60} Anthony v. Titus, 11th Dist. No. 2003-L-068,2004-Ohio-3193.
 {¶ 61} Hoepker v. Zurich Am. Ins. Co., 3rd Dist. No. 14-03-18, 2003-Ohio-5138.
 {¶ 62} Governale v. Sprecher, 12th Dist. No. CA2002-10-112, 2003-Ohio-2376.
 {¶ 63} Hamilton v. CNA Ins., 2nd Dist. No. 1591, 2003-Ohio-1761.
 {¶ 64} Piciorea v. Genesis Ins. Co., 8th Dist. No. 82097, 2003-Ohio-3955.
 {¶ 65} In the matter before us, the named insured is Schwebel Baking Co., a corporation. A further policy endorsement added a list of twenty other corporations and partnerships included as named insureds. (CA 79 90, Changes — Named Insured Endorsement.) Regardless of the which definition of "you" Appellee might rely upon, and even if this definition includes employees like Appellee, the purported insured must also be occupying a "covered `auto'." Neither Appellee, Schwebel, nor anyone connected to Schwebel owned the auto that caused Appellee's injuries.
 {¶ 66} AMM also argues that the BAP did not contain the ambiguity contained in Scott-Pontzer because specific individuals were named as insureds in the policy, including Lee Schwebel, Joseph Schwebel and Paul Schwebel. (CA 99 10, DRIVE OTHER CAR COVERAGE — BROADENED COVERAGE FOR NAMED INDIVIDUALS.) Normally when a policy is alleged to contain a Scott-Pontzer
ambiguity, but then names specific individuals within the definition of named insureds, the ambiguity is resolved because the word "you" may refer to those specific individuals. Treadwayv. Jevcak, 822 N.E.2d 423, 2004-Ohio-5588, ¶ 10. In fact,Galatis itself concluded that when specific individuals are listed on a "Drive Other Car Coverage — Broadened Coverage for Named Individuals" endorsement, the ambiguity discussed inScott-Pontzer is removed. Galatis, 100 Ohio St.3d 216,2003-Ohio-5849, 797 N.E.2d 1256, at ¶ 53-54. Thus, it does not appear that Appellee may rely in any way on the Scott-Pontzer
analysis as to the policy at issue in this case.
 {¶ 67} Appellee's argument disregards the fact that the "named insured" is not simply a corporate entity, but includes seven individuals (Lee Schwebel, Joseph Schwebel, Alyson Winick, Joseph Winick, Barry Solomon, Frances Solomon, and Paul Schwebel; see Drive Other Car Coverage endorsement, CA 99 10, p. 1). Appellee's argument appears to be solely founded on the premise that the BAP's definition as to who is insured is ambiguous, when it not only clearly explains the circumstances required for coverage, but specifically names non-corporate entities as insureds. Thus, under no circumstance may we reach the argument that this language is so ambiguous that Appellee can possibly be entitled under any theory to UIM coverage as a matter of law under the principles set forth in Scott-Pontzer.
 {¶ 68} Appellee attempts to assert that he is an insured under the Auto Medical Payments endorsement of the BAP, which defines an insured as:
 {¶ 69} "B. WHO IS AN INSURED
 {¶ 70} "1. You while `occupying' or, while a pedestrian, when struck by any `auto.'
 {¶ 71} "2. If you are an individual, any `family member' * * *
 {¶ 72} "3. Anyone else `occupying' a covered `auto.' * * *." (Endorsement CA 99 03).
 {¶ 73} We cannot view this endorsement in a vacuum. As already noted, the BAP further defined "insured" by listing specific individuals, such as Paul Schwebel. "You" is not solely defined as a corporation. Thus, from the outset, the ambiguity that occurred in Scott-Pontzer has not occurred in this case.Galatis, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, at ¶ 53-54. Appellee is not a family member of an insured. He clearly was not occupying a covered auto. Thus, he does not qualify as an insured under any of the provisions of the auto medical payments endorsement because we must look, first, to the definitions section and apply the two in harmony.
 {¶ 74} Furthermore, the auto medical payments endorsement itself contains the following exclusion:
 {¶ 75} "C. EXCLUSIONS
 {¶ 76} "* * *
 {¶ 77} "4. `Bodily injury' to your `employee' arising out of and in the course of employment by you. * * *." (Endorsement CA 99 03).
 {¶ 78} Even if Appellee could somehow qualify as an insured under Section B of this endorsement, he is excluded under Section C. His entire argument is premised on the fact that he was acting in the course and scope of employment. Section C excludes "med pay" coverage for an employee acting in the course and scope of employment.
 {¶ 79} We have not found any ambiguity in the definition of the named insureds in the BAP, thus, there is no ambiguity to resolve under the rationale used by Scott-Pontzer. Appellee is not an insured for purposes of UIM coverage under the BAP, and therefore, should not have been awarded UIM benefits by the trial court. Appellant's first assignment of error is hereby sustained.
 ASSIGNMENT OF ERROR NO. 2 {¶ 80} "The Trial Court Erred By Not Granting Summary Judgment In Favor Of Plaintiff-Appellant AMM Because The Ohio UIM Reduction Form To The Business Auto Policy Is Valid And Enforceable."
 {¶ 81} One of the reasons that the trial court gave when granting summary judgment to Appellee was that AMM failed to establish that it had in its possession a valid UIM reduction form. AMM argues that Schwebel had reduced its UIM coverage to $25,000 by signing a reduction form, and even if Appellee were otherwise entitled to coverage he could not receive UIM benefits because the $100,000 that he received from the tortfeasor and from his own insurance policy would more than offset the $25,000 in allegedly available UIM coverage.
 {¶ 82} The trial court found the reduction form invalid because it did not conform to the requirements of Linko v.Indemn. Ins. Co. of N. Am. (2000), 90 Ohio St.3d 445,739 N.E.2d 338, which held: "To satisfy the offer requirement of R.C.3937.18, the insurer must inform the insured of the availability of UM/UIM coverage, set forth the premium for UM/UIM coverage, include a brief description of the coverage, and expressly state the UM/UIM coverage limits in its offer[.]" Id. at 447-448. The trial court concluded that AMM did not show that its offer of reduced UIM coverage included the various possible premiums for different levels of UM/UIM coverage, violating the third prong ofLinko. Based on that premise, the trial court concluded that UM/UIM coverage arose as a matter of law in the same amount the liability coverage of the BAP. Although AMM established with extrinsic evidence that Paul Schwebel knew what the different premiums were before he signed the reduction form, the trial court held that the Linko requirements could not be proven by extrinsic evidence, but must appear in the four corners of the reduction form.
 {¶ 83} Obviously, if Appellee is not a covered insured in the first instance, he cannot receive UIM benefits under the policy. We have already established that Appellee is not an insured under the BAP. However, if we assume for the sake of argument that Appellee could be covered as an insured, we agree with Appellant that this matter involves a valid reduction form, and that any possible UIM benefits would be more than offset by the amounts already recovered by Appellee. Although the trial court may have been correct in applying the Linko analysis at the time this matter was before the court, the Supreme Court has subsequently modified its position concerning Linko and has held that: "[o]nce a signed rejection is produced, the elements of the offer may be demonstrated by extrinsic evidence." Hollon v. Clary,104 Ohio St.3d 526, 2004-Ohio-6772, 820 N.E.2d 881, ¶ 14.
 {¶ 84} In Hollon, the insurance company attempted to establish that it had made a valid offer of UM/UIM coverage by referring, in part, to an affidavit from one of the owners of the insured corporation. The affidavit stated:
 {¶ 85} "Before approving and signing these rejection forms, I was informed, aware, and understood: (a) that UM/UIM coverage was available; (b) the amount of the premium that would be charged for UM/UIM coverage if I selected UM/UIM coverage, or of the reduced premium if I selected reduced UM/UIM limits; (c) what UM/UIM coverage was; and (d) that I was rejecting UM/UIM coverage in its entirety." Id. at ¶ 6.
 {¶ 86} The Court in Hollon also determined that the affidavit could be used to establish that a proper offer of UM/UIM coverage had been made:
 {¶ 87} "The Linko requirements are a means to an end. They were chosen to ensure that insurers make meaningful offers. A `meaningful offer' is `an offer that is an offer in substance and not just in name' that `allow[s] an insured to make an express, knowing rejection of [UM/UIM] coverage.' Linko,90 Ohio St.3d at 449, 739 N.E.2d 338. Though Twin City's written offer, per se, did not satisfy all the Linko requirements, we will not elevate form over substance or ignore the expressed intent of the parties to a contract. Unequivocally, American expressed that it did not wish to purchase UM/UIM coverage. Twin City's written offer of UM/UIM coverage, in conjunction with Miller's unrebutted affidavit, demonstrates that American's rejection was made after having received a brief description of coverage, an express statement of UM/UIM coverage limits, and the applicable premiums. We are, therefore, certain that American made an express, knowing rejection of UM/UIM coverage, and under H.B. 261, we can presume that a valid offer had been made." Id. at ¶ 13.
 {¶ 88} Although Hollon was decided after the trial court entered judgment in the instant matter, we must nevertheless apply the Hollon analysis on appeal. A decision by the Ohio Supreme Court overruling a former decision by that Court becomes retrospective in its operation, and the effect is not that the former decision was bad law, but that it never was the law.Peerless Elec. Co. v. Bowers (1955), 164 Ohio St. 209, 57 O.O. 411, 129 N.E.2d 467.
 {¶ 89} AMM provided extrinsic evidence, in the form of an affidavit of Paul Schwebel, that he was informed of the various premiums for UM/UIM coverage. This affidavit is substantially similar to the affidavit produced in the Hollon case. Although Appellee challenged the relevance of Mr. Schwebel's affidavit, he has not challenged its content. Therefore, there does not appear to be any material dispute that the Linko factors were satisfied once Paul Schwebel's affidavit is considered.
 {¶ 90} It is clear that UM/UIM coverage was properly reduced to $25,000. Appellee has conceded that more than $25,000 in setoffs to UIM coverage would apply. Thus, AMM would not be liable to Appellee for UIM coverage even if Appellee were an insured under the policy. AMM's second assignment of error is also sustained.
 ASSIGNMENT OF ERROR NO. 3 {¶ 91} "The Trial Court Erred By Not Granting Summary Judgment In Favor Of Plaintiff-Appellant AMM Relative To The Issue Of Setoff, Where The Defendant-Appellee Admitted That AMM Was Entitled To Setoff."
 {¶ 92} Both the parties agree that, under the terms of the BAP and under the requirements of R.C. § 3937.18, AMM is entitled to set off $100,000 from any available UIM benefits. We have determined that Appellee is not entitled to UIM coverage in any amount because he is not an insured, and furthermore, that UIM coverage was properly reduced to a maximum of $25,000 under a valid reduction of coverage form. There is no reason to further consider the issue of setoff because Appellant's maximum exposure for UIM benefits under the BAP was $25,000, and Appellee has already conceded that his setoff amount is $100,000. Therefore, this assignment of error is moot.
 ASSIGNMENT OF ERROR NO. 4 {¶ 93} "The Trial Court Erred By Not Granting Summary Judgment In Favor Of Plaintiff-Appellant AMM Relative To Defendant-Appellee's Claims Under The Commercial General Liability Policy, Where The Latter Admitted That No Coverage Was Afforded Thereunder."
 {¶ 94} Although AMM did mention that it had provided a CGL to Schwebel Baking Company, the record does not reflect that Appellee has ever asserted any claim under that insurance contract. Appellee's counterclaim does not mention or specify a CGL policy. The trial court appears to have made its ruling under the assumption that the only policy in dispute was the BAP. Other than AMM's answer to the counterclaim, the record appears to be devoid of any other reference to the CGL policy. Finally, Appellee's brief on appeal states: "Appellee does not contest that he is not entitled to coverage under the Commercial General Liability policy * * *." (Appellee's Brief, p. 21.) Therefore, AMM is correct that it has no liability to Appellee under the CGL policy. AMM's fourth assignment of error has merit.
 {¶ 95} We have sustained assignments of error one, two and four. Assignment of error three is moot. We hereby reverse the trial court's judgment. Appellee is not entitled to UIM benefits under the business auto policy nor under the commercial general liability policy under review in this case as a matter of law. We hereby grant summary judgment to American Manufacturers Mutual Insurance Company with respect to both insurance policies.
Donofrio, P.J. and DeGenaro, J., concurs.